## H. C. BRANSON v. JOHN HECKLER.

1. TITLE, *How Acquired; Possession.* Possession, though *prima facie* evidence of title, is only *prima facie,* and subject to be overthrown by other testimony; and to acquire title, purchase must be made from the owner, or one authorized to sell. (*Sumner v. McFarlan,* 15 Kas. 600.)

2. POSSESSION BY BAILEE; *Pledge; Authority.* The possession of goods by a bailee or agent gives him no power to pledge them for a debt of his own, except by virtue of actual authority received from the owner.

*Error from Franklin District Court.*

REPLEVIN by *John Heckler* for certain vehicles of the aggregate value of $490, claimed by him as his own, and held by *H. C. Branson* under an alleged lien thereon for advances for freight, storage and insurance. The action was tried at the September Term of the district court of Franklin county for 1878, by the court, a jury being waived. The court made the following findings of fact, viz.:

One William Heckler, about the 1st day of October, 1877, a citizen and resident of Ohio, then owned and had in his possession the vehicles mentioned in the petition, in that state. About that time he (Heckler) hired one K. W. McNeer to transport said property to Ottawa, Kansas, and paid him the contract price therefore, viz., the sum of $45. A car had had been at that time chartered by McNeer, in his own name, to carry freight from Ohio to Ottawa, Kansas, and it was then supposed by said Heckler that McNeer was going to ship said vehicles from Ohio to Ottawa, Kansas, by railroad, in his (McNeer's) own name, together with certain household goods belonging to McNeer, and certain other personal property belonging to a third party, on said chartered car. McNeer shipped the said vehicles in Ohio to Ottawa, Kansas, on said car by rail, receiving a bill of lading from the railroad company from which he had chartered said car, of which the following is a copy:

GREEN, O., October 15, 1877.

Received of K. W. McNeer, by the Cleveland & Mahoning Valley railroad company, the following property, in apparently good order (except as noted), marked and consigned as in the margin, which they agree to deliver, with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order, the dangers incident to railroad transportation, loss or damage by fire while at the de-

pots or stations, loss or damage of combustible articles by fire while in transit, and unavoidable accidents, excepted, at Cincinnati (O.) station, upon the payment of charges. The company further agrees to forward the property to the place of destination as per margin, but is not to be held liable on account thereof after the same shall be delivered as above.

*The conditions:* Petroleum, or its productions, taken only at the owner's risk of fire or leakage. The company does not agree to carry the property by any particular route, nor in time for any particular market. Oils and all other liquids at owner's risk of leakage; liquids in glass or earthen, drugs and medicines in boxes, glass and glassware in boxes, looking-glasses, marble, stoves, stove-plates and light castings, earthen or queensware, at owner's risk of breakage; agricultural implements, cabinet ware and furniture not boxed, carriages, at owner's risk of breakage or damage by chafing; oysters, poultry, dressed hogs, fresh meat and provisions of all kinds, trees, shrubbery, fruit, and all perishable property, at owner's risk of frost or decay. It is a part of this agreement, that all other carriers transporting the property herein receipted for, as a part of the through line, shall be entitled to the benefit of all the exceptions and conditions above mentioned; and if a carrier by water, he is to be entitled to the further benefit of exceptions from loss or damage arising from collisions and all other dangers incident to lake and river navigation.

*1 car, part Lumber, and H. H. Goods and Buggies, 20,000 lbs. Freight, and charges guaranteed to destination by special rate, at One Hundred and Forty-eight Dollars through. Car No. 43,099.* A. S. W.

K. W. McNeer, Ottawa, Kansas, via Leavittsburg, Cincinnati, St. Louis, to Ottawa, Kansas.

Charges advanced, $—. Contents and value of packages unknown.

A. REIDSTADT, *Agent for the Company.*

McNeer did not prepay said freight to the railroad company. On the arrival of the said car at Ottawa, Kansas, containing the said carriages and wagons, and all other goods and chattels above mentioned, the freight not having been paid, McNeer went to the defendant Branson, showed to him the said bill of lading, told him that he (McNeer) owned the said vehicles, and asked defendant to pay the freight on said chartered car, being the sum of $148, and to take possession of the vehicles above named as security for the repayment of said freight ($148), which NcNeer agreed to pay within a week or two, and as a further security for storage of the said vehicles and insurance thereon. And said Branson had no notice of the ownership of said vehicles, or of McNeer's authority over them, other than as before stated to have been given to him by McNeer; and said Branson agreed to accept said vehicles upon said terms, and thereupon said Branson paid said sum of $148 freight, and took the following receipt from the railroad company :

B. S. HENNING, *Receiver.*] OTTAWA STATION, Oct. 30, 1877.
R. W. McNEER, *To* LEAVENWORTH, LAWRENCE & GALVESTON R. R., *Dr.*
For freight and charges from Kansas City. Date of way-bill, Oct. 29. No. of way-bill, 774. No. of car, 43,099. Whose car, A. & G. W. De-

scription of property, household goods and lumber. Weight, 20,000. Rail-road charges, $25; back charges, $123; total, $148. Received payment for the company.               D. O. MCALLISTER, *Agent.*
    Consignor, K. C. & N.

And thereupon defendant took possession of said vehicles, by order of McNeer, and stored them in his private warehouse at Ottawa, where he still has them, and has kept them insured ever since he received them, which was on the 30th day of October, 1877. Said storage and insurance amounted, on June 22d, 1878, to $36.05; and on that day, and before this suit was brought, the plaintiff duly tendered to the defendant, at Ottawa, Kansas, the said amount of storage and insurance, and then and there duly demanded the possession of the said property from the defendant, who refused to deliver up the same only upon condition that plaintiff should pay defendant the said sum of $148, in addition to the amount so tendered, with interest to the date of such tender and demand. The said sum of $36.05 tendered has been by the plaintiff paid into court, by order of the court.

The plaintiff purchased the property described in the petition from the said William Heckler, after it was so shipped to Kansas, and before this suit was brought, and was at the commencement of this action the owner thereof. The value of said property described in the petition is the sum of $385. No part of said freight, storage or insurance has ever been paid to said defendant. The said bill of lading was transferred by McNeer to defendant, by delivery thereof with the said vehicles, and Branson still holds the said bill of lading. McNeer had no property in, or authority over, said vehicles, other than such as he received from the said contract of carriage made with William Heckler, in Ohio.

Upon these facts the court concluded as matter of law, that at the time of the commencement of this action, the defendant wrongfully detained from the plaintiff the property described in the petition, and that the plaintiff was and is entitled to recover the possession thereof, or the said sum of $385, the value thereof, in case a return could not be had. To which conclusion of law the defendant duly excepted. Judgment in favor of the plaintiff for the possession of the vehicles, and for all costs. *Branson* brings the case here on error.

*W. Littlefield,* and *Jno. W. Deford,* for plaintiff in error:

It clearly appears that Heckler clothed McNeer, or what is the same thing, permitted and authorized him to clothe himself, with the apparent absolute title to the property for the purpose of shipping, and when once clothed with the apparent title by the permission or acquiescence of the real owner, he became and was as to a *bona fide* purchaser or pledgee from him for value, without notice of any adverse title or interest, the absolute owner of the property, and could and did in this case by delivery of said vehicles, together with the bill of lading to Branson, and representing at the time that he was the owner, pass to Branson by pledge, the title to the property in question as much as the real owner could. Bills of lading being muniments of title, the indorsement or assignment thereof as absolutely transfers the general property of the goods and chattels therein named as would a bill of sale. (*Savings Bank v. A. T. & S. F. Rld. Co.,* 20 Kas. 519; 3 Greenl. Ev., § 422; Parsons's Merc. Law, 345; Edwards on Bailments, 220; 45 Mo. 145; 4 N. Y. 497; 8 How. 399, 400; Story on Agency, §§ 443, 93, 404, 405, 227, 228, 419, and cases there cited; *Duncan v. Blood,* 5 La. 11; 20 Md. 202; 7 Pa. St. 281; 6 Maule & Sel. 14; 2 Kent's Com. *621, and note; 15 Mo. 543; 9 Cow. 274; 15 East, 38; 3 B. & C. 38; 7 Cal. 26; 57 N. H. 34.)

It was in the power of Heckler to have had the vehicles consigned to McNeer, at Ottawa, for his (Heckler's) use, or on his account, or subject to his order, or the like, expressed in the bill of lading, which would have given to strangers dealing with McNeer full notice of his (Heckler's) ownership and authority over them, and thus effectually put it out of the power of McNeer to dispose of them in any manner as his own; hence Heckler's negligence in that respect was culpable, and had the same effect as fraud. (2 Parsons on Cont., 5th ed., 798, 799, and notes; 10 Ad. & E. 437, 452.) And he is estopped in this action by reason of his negligence in that respect, and is concluded by the representations made

by his agent, McNeer, to Branson. (2 Parsons on Cont., 792 to 795, note, and cases cited; 2 Black, 372; 3 Woodb. & M. 529; 1 Oreg. 115; 1 Pet. 445; 6 Serg. & R. 429.)

As the railroad company had a lien on the vehicles for the freight, and could have insisted on payment from the real owner before the delivery of the goods, (56 Me. 60,) the transfer and delivery of the vehicles from the railroad company to Branson did not destroy the railroad company's lien for the freight, but merely transferred it to Branson, who was by that transfer subrogated to the rights of the railroad company, and who still holds that lien; and this transfer did not give the owner of the vehicles the right to reclaim them on any other or better terms than he could have done before such transfer. (15 Mass. 408; Edwards on Bailments, 548, 220, 221.)

Heckler ratified this contract of his agent McNeer. (Benjamin on Sales, § 745; *Babcock v. Deford*, 14 Kas. 408; 6 Mass. 193; 17 id. 103; Story on Agency, § 253.)

*Benson & Parkinson,* for defendant in error:

The lien of the plaintiff in error, if any existed, must have arisen upon one or both of the following propositions: First, that the delivery, with the bill of lading, by McNeer, as security for the money advanced, was good as a *pledge;* or, second, that the payment of the freight by Branson, at McNeer's request, operated to transfer the lien of the railroad company for freight to the former. Neither proposition can be sustained.

1. As to the first, it is a fundamental rule of law that no one shall be deprived of his property without his consent, expressed or implied. Another familiar rule is, that a principal is bound only by the authorized acts of his agent. (13 N. Y. 599.) McNeer was Heckler's special agent to ship this property from Ohio to Kansas, and it might be inferred that in the absence of the owner, at the place of consignment, he would be authorized to store the property in some safe place. Here his agency ended. He had no power to sell

the property; but even an absolute power to sell does not include the power to pledge, and this is true whether the agent is a technical factor or not. (19 Cal. 64.) "Possession is only *prima facie* evidence of ownership, and never prevails against the true owner, except with reference to negotiable instruments and currency." (19 Cal., *supra*, p. 76.) And the court adds: "The principle that no one can be divested of his property without his consent, and the maxim that no one can transfer a better title than he himself has, control all questions arising as to property of which a transfer is attempted, with the exceptions stated."

This case does not come within the exceptions, since a bill of lading is not a negotiable instrument. (*Savings Bank v. A. T. & Santa Fé Rld. Co.*, 20 Kas. 519–527. See also, 7 Wis. 620; 14 Johns. 128; 1 E. D. Smith, 7; 2 Mass. 397; 1 Cush. 228; Edwards on Bailments, 213–220.)

The *bona fide* purchaser of goods may recover the same, or the proceeds thereof, from a pledgee of the consignee. The pledge is void as against the owner. (5 Cush. 111.) Much confidence is reposed by counsel for the pledgee, in the bill of lading, and the delivery thereof. A bill of lading is but the symbol of the goods. When the possession of the latter is given, the transfer of the former gives no higher or better rights. (1 Parsons on Cont. 606, note; 115 Mass. 224.)

The case of *Savings Bank v. A. T. & Santa Fé Rld. Co.*, *supra*, does not conflict with any proposition herein contended for. In this case there was no indorsement of the bill of lading by the *owner*. It was not done in the usual course of business. It was not done on a *sale* of the property, and to show a symbolical delivery. The whole transaction was nothing more than the pledge of the principal's property, by the agent, for his own debt, and without authority. The transfer of the bill of lading was an idle and useless ceremony — since the goods themselves were delivered. Now it will be conceded, that without the bill of lading, Branson would have aquired no lien upon these goods as against the owner. How can it be said that the transfer of

the symbol of possession can give him any better right? The symbol of the thing cannot be of more consequence than the thing itself.

The entire argument of the plaintiff in error, drawn from the bill of lading, is founded in misapprehension; and while many propositions stated are true in the abstract, they have no application to the facts in this case.

2. The voluntary payment of the freight by Branson to the railway company, could not operate to transfer the lien of the company to Branson. The rule that a mere volunteer, by paying the debt or discharging the liability of another, without any agreement for a transfer of the debt or demand to the party so paying, cannot be subrogated to the rights of the person so holding said demand, is stated in 21 Wis. 63. The relation of debtor and creditor must exist, so that an action would lie for the amount. 1 Doug. (Mich.), 1. There was no subrogation here. (Bouv. Law Dic., title, *Subrogation;* 15 Wis. 627; 7 Cent. L. J. 152, 153; 3 Paige Ch. 117, 122; 1 N. Y. 586.)

Of course, the fact that McNeer requested Branson to pay the freight, cannot have the effect to transfer the lien of the railway company (if there was a lien), since the company never consented to do so. So far as the company was concerned, it was simply a payment of its claim, and it gave a release accordingly. This discharged absolutely any real or supposed carrier's lien, and nothing was left to transfer.

We submit, then, first, that Branson's payment was purely voluntary, as in the case of A.'s paying B.'s taxes without B.'s request; second, that it was purely and simply a loan of money from Branson to McNeer, secured by a pledge of Heckler's goods, without the owner's knowledge or consent.

A carrier receiving goods from a wrong-doer, has no lien for freight charges. 2 Am. Rly. Cases (Redfield), 216, and note; 9 Gray, 231.

Another feature of this case is important, as showing the invalidity of Branson's pretended "lien." The $148 charged was the entire freight on the whole car, consisting of many

articles belonging to McNeer and other persons, besides the property in question. Heckler paid the freight in full on his property. When the car arrived at its destination, McNeer pledged the only property on which the freight had been paid to satisfy the charges on the balance of the car-load. Branson had notice from his bill of lading and railway receipt of the other goods, but assumed to hold this particular lot under a supposed transfer of the carrier's lien for freight on the residue. This is manifestly improper. (*Adams v. Clark*, 9 Cush. 215; 2 Redfield's Rly. Cases, p. 216, note; 26 Ill. 195.)

The opinion of the court was delivered by

HORTON, C. J.: It is a general principle of the law of personal property, that no one can be divested of his property without his own consent. Founded upon this fundamental principle, the doctrine is well established, that if the owner loses his property or is robbed of it, or it is sold or pledged without his consent by one who has only a temporary right to its use by hiring or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be done upon it, the owner can follow and reclaim it in the possession of any person, however innocent. There are a good many exceptions to this general rule, but this case does not fall within any of these exceptions. The findings of fact show substantially that McNeer, without any authority therefor, pledged the personal property of another in his possession for a specific purpose for a debt due from him. This is about all there is in the case, and the court did not commit any error in its ruling that the owner had the right to recover it without paying the debt of McNeer. "Possession, though *prima facie* evidence of title, is only *prima facie*, and subject to be overthrown by other testimony; and to acquire title, purchase must be made from the owner or one authorized to sell." (*Sumner v. McFarlan*, 15 Kas. 600.) As McNeer had no authority to pledge or sell the property, he

could no more make a pledge of it for his own debt than he could have made a valid sale. Counsel however refer to the case of *Savings Bank v. A. T. & Santa Fé Rld. Co.*, 20 Kas. 519, and claim that, within the principles therein stated, the plaintiff in error is entitled to a reversal of the judgment of the lower court. We do not think that case applicable. The findings of fact show a wide distinction. In this case, William Heckler hired McNeer to transport the property from Ohio to Kansas, and paid him $45 therefor. He understood that McNeer was going to convey such property, along with certain household goods owned by him, with other personal property belonging to a third party, in a car which he had chartered for that special purpose. A bill of lading was issued to McNeer for one car containing lumber, household goods and buggies. The freight for the car-load was $148. After the goods had reached their destination, the bill of lading was turned over to Branson, and the latter paid the $148 for freight, and then took actual, not symbolical, possession of the vehicles. The money does not seem to have been advanced upon the bill of. lading, as only a portion of the property embraced therein was accepted as security for the loan, and a lien is only asserted to the property taken into actual possession. The balance of the property, probably sufficient to pay the claim of Branson, seems to have been retained by McNeer. To facilitate commercial transactions, a bill of lading has grown to be regarded as the symbolical representation of the goods which it describes; but its transfer only carries with it generally such rights as the party in possession of the goods could transmit by actual corporal transfer of the goods themselves. In this case, Branson claims from possession. As before stated, we can only regard the whole transaction as nothing more than the pledge of the principal's property by the agent for his own debt, and without authority. There was no fraud or misconduct on the part of the owner of the property transported to Ottawa, and therefore the general rule that the possession of goods

by a bailee or servant gives him no power to make any disposition of them, except by virtue of actual authority re-, ceived from the owner, is applicable here.

The judgment of the district court will be affirmed.

All the Justices concurring.