Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL,
Hon. FRANK E. GILLETTE,
Hon. CLINTON F. IRWIN, } Associate Justices.
Hon. J. L. PANCOAST.
Hon. M. C. GARBER,

GUTHRIE & WESTERN RAILROAD COMPANY, a *Corporation*, v.
W. L. RHODES.

'(Filed June 25, 1907.)

(91 Pac. 1119.)

1. EVIDENCE—Parol Evidence—Written Contract—Supersession of Oral Negotiations. Under the laws of this territory, the execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject matter which preceded or accompanied the execution of the instrument; hence, where a note is given as subscription to a railroad corporation to aid in the construction and building of said road, any repre-. sentation made prior to or contemporaneous with the execution of the note are inadmissable to contradict, change, vary, or add to the conditions plainly incorporated into and made a part of said note.

2. BILLS AND NOTES—Action—Defenses—Misrepresentation. In the absence of any proof that the signer of a note or written instrument is unable to read, an answer which admits the execu-

tion of a subscription note sued upon, but alleges that the person procuring the note had misrepresented the conditions of the same and the extent of the liability that the defendant would incur in signing the same, where the note is in plain language and unambiguous in its terms, such answer will be insufficient to constitute a defense.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

Reversed and remanded.

*Green, Martin & Tibbetts* and *Devereux & Hildreth,* for plaintiff in error.

*Cotteral & Hornor,* for defendant in error.

### STATEMENT OF THE CASE.

This was a civil action, tried in the district court of Logan county to collect a promissory note executed by the defendant in error to the plaintiff in error, of which the following is a copy:

"$500.                    Guthrie, Okla., January 9, 1900.

"On completion of the railroads of the Guthrie and Western Railway Company and the Kingfisher and Guthrie Railway Company from Kingfisher, Oklahoma, from a point on the Chicago, Rock Island and Pacific Railway at or near Kingfisher, to a point on the main line of the Atchinson, Topeka & Santa Fe Railway Company at or between the stations of Seward and Guthrie, for value received, in consideration of the construction of said railroads, I promise to pay to the order of the Guthrie and Western Railway Company five hundred dollars ($500.00) at the Guthrie National Bank, Guthrie, Oklahoma, with interest at 10 per cent. per annum from completion of said railroad. I hereby waive presentment for payment, notice of non-payment, protest and notice of protest. If suit be instituted, I agree to pay 10 per cent additional as attorney's fee, and in case of judgment said attorney's fee to be included in said judgment.

[10 Cent Int. Rev. Stamp.]                    "W. L. RHODES."

The petition is in the usual form, declaring on the note and alleging specifically that the plaintiff had fully complied with all the terms and conditions of the contract. To this petition answer was filed. The answer pleads, first, a general denial. For a

second defense the answer admits the execution of the note, but alleges that the execution was procured by misrepresentation and fraud, and pleads as the facts constituting the fraud that the plaintiff resides in the city of Guthrie, and is a property holder and interested in the growth and development of the city; that at the time the note was given the Atchinson, Topeka & Santa Fe Railroad was the only railroad running in or out of said city, and that for commercial purposes it would tend to enhance the value of property in the city to get new lines of railroad constructed into it; that at the time the said note was given the Chicago, Rock Island and Pacific Railway Company was operating a line of railway about 35 miles. west of Guthrie, and that said railroad had extensive lines of railway, and was of great benefit to cities into which it ran its road; that at the said time property owners in the city of Guthrie were anxious to secure other lines of railroad in addition to the Santa Fe for said city, and were willing to pay money in order to get such lines into the city; that a short time prior to January 9, 1900, public notice was given in Guthrie that there would be a mass meeting for the purpose of hearing a proposition submitted by the Rock Island Railroad to build its line into Guthrie; that said notice was circulated by Henry Asp and J. B. Beadles, and other persons, who acted for the subsequently incorporated plaintiff; that on the evening announced for the meeting the defendant and a large number of citizens assembled, and persons there present, representing the interest afterward incorporated into the plaintiff, made speeches concerning the purpose of the meeting and laying before the people a proposition to raise money to induce the Rock Island Railroad to build into Guthrie; that it was stated by Henry E. Asp and several others, afterward incorporated under the name of the Guthrie and Western Railroad Company, that if the citizens of Guthrie would donate the sum of $15,000 raised by subscription, the Rock Island would build and operate a line of railway from Kingfisher to Guthrie; that the advantages of such a connection to the city of Guthrie were set forth

in those speeches for the purpose of inducing those present and other citizens to subscribe for said bonus; that the speakers claimed to have information that, if the subscription was raised, the Rock Island would build from Kingfisher to Guthrie; that subscriptions were then called for and various persons subscribed, and that the name of this defendant was called, and he was requested to subscribe $500, when he said that he would subscribe $500 if one J. M. Brooks would do the same; that Brooks refused, but that several people at the meeting cried out that Brooks would subscribe the $500, although Brooks continued to refuse; that defendant does not know whether Brooks subscribed $500 or not, but that he made his subscription on the condition that Brooks did so, and that he had the impression that Brooks had subscribed the $500; that the defendant signed the note set out in the petition in haste, and did not read it, except he saw it was for the sum of $500 and defendant supposed that the note conformed to the statements which had been made by Mr. Asp and others at the meeting; that it was stated at the meeting that the road might be built under another name, but it really was the Rock Island road; that at the time he signed said note he believed that his subscription was for the purpose of inducing the Rock Island road to build into Guthrie, and that he formed this opinion from what was said at the meeting, and that nothing was said at said meeting which would intimate that the Santa Fe Railway had anything to do with the project, but it was stated that it was not a Santa Fe project, but a Rock Island enterprise; that defendant had no information on the subject, except what he got at the meeting, and that he believed and relied on these representations, and, if the representations had not been made, he would not have signed the note. Defendant further alleges, in this paragraph of his answer, that the Rock Island road has never built into Guthrie, and that in fact the Guthrie and Western Railway is not part of the Rock Island system, but is a branch of the Santa Fe road; that it was well known to the persons who presented the proposition to the people of Guthrie and to

the defendant to raise said bonus that the Rock Island road had no intention of building into Guthrie, and that the road intended to be built would be a part of the Santa Fe system, and not of the Rock Island system; that the person making these representations was the agent of the plaintiff, and made the proposition for and on behalf of the plaintiff, and of the Santa Fe Railway, and misrepresented the facts in order to raise the subscriptions, and that no one would have subscribed said bonus if it had been known that it was a Santa Fe scheme; and, knowing this, the agent of the plaintiff carefully cultivated the impression that it was not a Santa Fe, but a Rock Island, project; that the defendant gave the note in suit solely upon such representation, and that there was no other consideration, save the proposition to get the Rock Island into Guthrie. Defendant further alleges that said Brooks never subscribed $500.

For a third defense, defendant substantially alleges that the plaintiff and its agent fraudulently represented that the proposed bonus, to which the defendant subscribed, was for the purpose of inducing the Rock Island Railway to build into Guthrie, when in fact the bonus was to be used to build a branch for the Santa Fe, and that the defendant executed the note sued upon believing that it was to induce the Rock Island road to build into Guthrie. The fourth defense alleges a conspiracy to induce the defendant and others to subscribe by making bogus subscriptions. The fifth defense was that subscriptions largely in excess of $15,000 were obtained, but there was no evidence offered under this defense. The sixth defense is that the note was void, because under the charter the road would have been built from Guthrie, and not from Seward.

To this answer, and each paragraph thereof, except the general denial, the plaintiff demurred on the ground that the facts stated did not constitute a defense. This demurrer was overruled, to which exceptions were saved. Thereupon the plaintiff replied by a general denial, and the case was tried on these issues. Verdict

was returned in favor of the defendant. Motion for new trial was filed and overruled, exceptions saved, and the case is brought here for review.

Opinion of the court by

IRWIN, J.: In this case the plaintiff in error relies upon six assignments of error. We think it will only be necessary to consider three: First, the overruling of the plaintiff's demurrer to the amended answer; second, error in admitting testimony for the defendant over the objection of the plaintiff; sixth, that the court erred in overruling plaintiff's motion for a new trial. It will be observed, from a perusal of this record, that the entire subject matter of the defendant's defense to this note is based upon statements made of promises at a meeting of citizens held in Guthrie, prior to the execution of this note, which meeting was held for the purpose of raising a bonus to secure a line of railroad from Kingfisher, on the Rock Island, to Guthrie. There is nothing in the record so far as the proof shows to indicate that any of the parties making these statements at said meeting were acting for or authorized to act for, or pretended to be acting for, the holder of this note. And, even if they were, such statements made prior to, or contemporaneous with, the execution of this note, and being statements which were in direct conflict and contradiction with the plain, unequivocal terms of the note, would not be sufficient to constitute a defense to the note under the plain provisions of our statute. The Revised Statutes of Oklahoma 1893, section 822, reads as follows:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

This provision of the statute was no doubt designed by the legislature to preclude the admission of oral testimony to vary, contradict, or change the terms of a written contract, and was in strict accord with the spirit and principles of the common law

on this subject. This note, by its terms, sets forth in clear, distinct and unmistakable language all the terms, qualifications, and conditions attached thereto, and no person of ordinary understanding could read such a note and have any doubt as to its intention, purport, and meaning. The allegations of the answer amount only to a statement that at a public meeting held, not in the name of the payee of this note, not purporting to be held by the authority of the Guthrie and Western Railway Company, but held by the citizens for the purpose of securing a public expression from the resident property owners of Guthrie as to whether it was advisable to raise the bonus necessary to secure this connecting line of road or not, certain representations and statements amounting to promises were made by certain persons in certain public speeches, and in our judgment amount only to expressions of opinion as to the benefits to be derived from securing this line of road. An examination into the evidence will show that the recollections of the defendant in error as to what took place in that meeting, the expressions that were used, and the promises that were made are very uncertain and indefinite. On page 61 of the record the following appears in the testimony of the defendant in error:

"Ques. Who made that statement? Ans. Judge Green, if my memory serves me right.

"Q. Geo. S. Green? A. Geo. S. Green; yes, sir.

"Q. You may state what he said. (Objected to, for the reason it is hearsay and irrelevant, which objection was by the court overruled.)

"Q. Go ahead and state what he said. A. Well—

"Q. Did he get up on his feet and talk? A. He did.

"Q. Go ahead and state what he said. A. He said this meeting was for the purpose of securing a bonus of $15,000 to secure the Rock Island Railroad for Guthrie.

"Q. Is that all he said? A. Well, I couldn't tell you. It has been quite a while—four or five years. I can't remember all that he said in regard to it. He made quite an address there, and enthused everyone so much as to say—

"Q. What was the subject of his address? (Objected to, as

not binding on the plaintiff company and tending to contradict the terms of the written contract made subsequent to it, which objection was by the court overruled, to which the plaintiff excepted.)   A.   I don't remember now.

"Q.   You can't undertake to say every word he said, but I want you to undertake to outline his address.   A.   Judge Green's address?

"Q.   Yes, sir.   A.   Well, I don't remember all of it—but very little of it—it has been so long, I don't suppose I have thought of it since that time, only just that meeting run through my mind, and who got up there and spoke, but I can't— (Objected to, as to the competency of the witness, which objection was by the court overruled.)   A.   I think I have given you about all I remember of it, about him making the statement that it would be the Rock Island road, and by securing this $15,000 they would run the Rock Island road into Guthrie, and by that means secure one of the great trunk lines of the United States.   I remember that part of it—great trunk line."

On page 90, in Mr. Rhodes' testimony, the following appears:

"Ques.   You have stated, after you came off the stand, that you weren't certain about one proposition, about Lou Beadles, did you?   Do you wish to make any other statement in regard to that?   (Objected to, as assuming a statement not in evidence, which objection was by the court overruled, to which the plaintiff excepted.)

"Q.   Go ahead.   A.   Well, now, I stated I thought it was Lou Beadles writing the notes, but since I went off the stand it kind of run through my mind that it was young Geo. Green.

"Q.   You wouldn't be certain about either one?   A.   No, I wouldn't.   It is five years, and I ain't got a very good memory anyway."

Now, in our judgment, these statements, and this kind of evidence is not sufficient to warrant the court in receiving it for the purpose of ingrafting a new condition into a written contract. We think, under the authorities, and under the plain letter of this statute, parol evidence was not admissible to add a condition to this note, especially when the note itself, on its face, distinctly informs the defendant that he was to pay the $500 upon the completion of

the railroads mentioned in the note. A contract of this kind is legal and enforceable, as decided by our supreme court in the case of *Piper v. Choctaw Northern Town Site & Improvement Company,* reported in 16 Okla. 436, 85 Pac. 965. It will be ascertained from an examination of the evidence that the recollection of the defendant in error as to what took place at that meeting is somewhat indistinct, from the fact that he says his understanding was he was not to sign this note unless one J. M. Brooks should have first subscribed $500, that at that meeting Brooks distinctly refused to subscribe, and that he did not know afterwards whether Brooks subscribed or not. This seems to us like a very singular statement, that a man would base his promise to subscribe upon the promise of another, and that he was not to sign the note or pay the bonus except in the event that the other party paid a similar amount, and that he then should sign a note which contained the plain unequivocal conditions of this note without first ascertaining whether the other had complied on his part or not. Furthermore, it seems to us that these representations, if any were made at that meeting, were representations as to mere matters of opinion, and as to something that was to transpire in the future. The representations do not refer to past or existing facts, but relate wholly to what may transpire in the future. The most that can be contended for the defendant is an expression of opinion as to what may transpire in the future. While the note in question, it is true, is based upon conditions, yet, as shown by the allegations of the plaintiff and the proof in the case, all of those conditions which were contained in the note had been complied with in both letter and spirit at the time of the commencing of this suit. We take it that the rule is elementary that to constitute a representation which amounts to a fraud, as the term "fraud" is understood in the law, there must be a statement or representation as to a fact, and must be as to a fact existing in the present or in the past. Now, according to the claim of the defendant, it was alleged in that meeting that a certain railroad corporation would build and operate this

road.    There is nothing to show that any person at that meeting possessed any superior knowledge concerning this matter, or that the representations were made upon any authority of the Guthrie and Western Railway Company, to whom this written obligation was made payable.    The most that can be claimed is that is was an expression of opinion as to what would take place in the future, and we think the answer is wanting in all the essential elements which constitute a fraud.    It is elementary that the representations made must relate to a present or past state of facts, and that relief as for deceit cannot be obtained for the non-performance of a promise or other statements looking to the future.    In support of this doctrine, see Bigelow on Frauds, 11, 12; *Mally v. Austin,* 65 Wis. 527, 27 N. W. 162; *Prince v. Overholser,* 75 Wis. 646, 44 N. W. 775.

The rule has been repeatedly held that the defendant cannot be relieved on the ground of fraud unless an action can be maintained for deceit, and it has been held in respect to representations relating to a future fact as a mere expression of opinion that such representation is not fraudulent or actionable if it relates to a future event, and is of the opinion that a railroad will be built and operated by a certain well-known railroad corporation.

The rule is laid down in *Gordon v. Butler,* 105 U. S. 553, by Mr. Justice Field, that an expression of opinion, however fallacious, in regard to property, the value of which depended upon contingencies, is not sufficient to predicate fraud upon.

In the case of *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179, representations made by vendor of mining stock that the vendee could not lose upon his investment and that the mines would pay a dividend in the near future, being a mere expression of opinion, or a promise of a future condition of things, will not form a ground of recovery by the vendee on the ground of false representations.

In the case of *Sheldon v. Davidson,* 85 Wis. 138, 55 N. W. 161, it was held that a representation by a defendant that the plaintiff could have possession of a certain building on property leased to

plaintiff on a certain date, several months after the making of such representation, is not actionable, though such event did not occur, in that it relates to a future, and not to a past or present, event.

In the case at bar the defendant seeks to avoid the payment of this note by setting up certain facts or representations with reference to what would take place in the future, and upon these alleged frauds, which he says were practiced upon him, he seeks to avoid the payment of the note which he acknowledged he signed. It is well settled in principle, as well as by authority, that no statement as to what would be done or was intended to be done in the future constitutes a fraud. It was so expressly held in the case of *Milwaukee Brick & Cement Company v. Schoknecht*, 108 Wis. 457, 84 N. W. 838. The Wisconsin supreme court said:

"But no statement as to what would be done or intended to be done in the future constitutes a fraud. To be such it must relate to a present or past state of facts." See also: *Patterson v. Wright*, 64 Wis. 289, 25 N. W. 10; *Field v. Siegel*, 99 Wis. 609, 75 N. W. 397.

In *McAlister v. Indianapolis and C. R. Co.*, 15 Ind. 11, it was held:

"A citizen of a certain town made unconditional subscription to the stock of a railroad company, the company promising that the branch of the road should be made to the town in which the subscriber resided. Held, that such subscriber could not recover the money paid on the ground of fraud in failing to build the road to the town, the promise being no more than the expression of an existing intent to make such branch."

It seems to us there is another essential element lacking in this answer, and that is, there is no allegation as to any damages having been sustained. According to the allegations of this answer the railroad was to have been built and operated in a certain way. Now, if it is conceded, for the purpose of argument, that this is true, it does not appear wherein or in what manner the defendant has been damaged. It is conceded that this line of railroad, connecting the two great trunk lines in the territory, has been built.

But it is claimed that, because it is not operated by a certain company, or as originally built by a certain company, or in a certain way to suit the ideas and notions of the defendant, that in that way he has been injured, and relieved of his obligation.

In the case of *Parker v. Jewett*, 52 Minn. 514, 55 N. W. 56, it was held:

"An answer setting up fraud or deceit as defense to a promissory note should show damage and the extent thereof. The action is upon a promissory note. The answer sets up as a defense that the note was given for mining stock, and that the defendant purchased the same, relying upon certain representations which he alleges were false and fraudulent. * * * The answer winds up by stating generally that the defendant had derived no benefit in any way, and had received no consideration whatever for the note."

The court observed:

"It does not appear that the mine in question has not some value, or that the stock is worthless, or of how much less value it was than the amount paid for it; in other words, it does not show what, or how much, damage defendant had suffered. When the basis of the defense to a promissory note given upon the purchase of property—as, in this case, stock—is fraud and deceit, through which the defendant was induced to purchase that which proves to be of no value, or of less value than contracted to be paid therefor, it is obvious that the facts should be pleaded, whether the defense attempted to be made is complete or partial."

In the case of *Godding v. Colorado Springs Live Stock Company*, 4 Colo. App. 14, 34 Pac. 944, it was held that mere expressions of opinion are not false representations. A misstatement, to be actionable, must relate to existing facts peculiarly within the knowledge of the party, and they there cite *Stimson v. Helps*, 9 Colo. 33, 10 Pac. 209; *Adams v. Shiffer*, 11 Colo. 29, 17 Pac. 21. Cooley on Torts. 468-474.

The rule was stated by Chancellor Kent, in his Commentaries, vol. 2, star page 485:

"The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and

folly, or an indifference to the ordinary and accessible means of information."

In this case the note is couched in clear, distinct and unmistakable language. It is explicit as to all its terms and conditions. There is no evidence that the party signing the same was incapable of reading, or that any artifice or deceit was practiced upon him to prevent his reading it. The only excuse for not reading it and understanding its terms is that he signed it hastily, presuming it contained all the conditions indicated by the representations made at the public meeting mentioned in his evidence. We take it the rule is well established that in the absence of any evidence of incapacity to read, or any trick or artifice resorted to to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions, be heard to say that its terms or conditions should be other or different from what they are.

In *Mullen v. Beach Grove Park,* 64 Indiana 202, the Indiana supreme court says:

"An answer admitting the execution of the subscription sued upon, but alleging that the person procuring his signature had misrepresented the contents of the subscription and the extent of liability the defendant would incur by signing it, is insufficient."

And we think this is peculiarly true where the evidence fails to show that the party is incapable of reading it, and where it does show that he had full and ample opportunities to investigate and determine its conditions, if he had so desired.

In *Fox v. Allenville Co.,* 46 Ind. 31, it is said:

"Statements by one procuring subscriptions for a creamery that the profits would be large are mere matters of opinion, and, even if false, do not constitute a defense to an action for the subscription."

In *Davis v. Campbell*, 93 Iowa, 524, the Iowa supreme court say:

"A statement, by persons taking a subscription to a railroad, that the road would be completed to a certain point by a certain day, are mere expressions of opinion, which, although not fulfilled, will not defeat a recovery on the subscription."

In *Sawyer v. Pickett*, 19 Wall. 146, the supreme court of the United States say:

"A representation as to the prospects of the railroad, and its probable effect on the value of property through or past which it runs, are matters of opinion, and. will not constitute such fraud as will defeat a subscription to the stock of the road."

Nor do we think it can be contended that the evidence of these statements made at this public meeting by the various parties making the speeches there is admissible as the statements made by the agents of the company, or that the railroad company to whom this note is payable can be bound by their declarations, because an examination of the testimony of the defendant in error, on pages 90 and 91, will show that he is uncertain as to just who drew these notes, and in fact his final conclusion is that they were drawn by young Geo. Green, and there is nothing in the record or evidence to show that young Geo. Green made any statement of any kind or character as to who would build this road, or any of the representations which the defendant now claims he relies on as a defense.    There is not the slightest evidence in the record to show that this meeting was ever called at the instance of the railroad company; but there is evidence, and all the evidence is to show that this meeting was called by the citizens themselves to secure a benefit to the town, and we are at a loss to see under what principle of law a written contract, plain upon its face, clear and unmistakable in its terms, and which clearly discloses all its conditions, can be changed, varied, or set aside by proof of statements made by parties which the evidence fails to show had any authority to bind the payee of the note, and when such statements were made, according to the evidence, prior to the signing of such note.

Now, under this condition of the record, we think it was plainly the duty of the court to have sustained the demurrer of the plaintiff in error. It is true that the answer in this case contains a general denial, but this general denial does not constitute a defense to this action for two reasons, at least: First. This is an action upon a promissory note, purported to be signed by the defendant in the court below. The general denial is unverified. This, under our statute, does not place or put in question the signature to the note. The note was competent evidence, without further proof, under such a pleading. Second. While the general denial, if sworn to, would have put the execution of this note in issue, yet the second cause of action alleged is inconsistent with a general denial, in so far as it admits the execution of the note, for the second cause of action expressly admits the execution of the note, and in our judgment the allegations of the answer are not sufficient to constitute a defense in this case, and for this reason the court should have sustained the demurrer filed by the plaintiff in error in the court below. But, having failed to sustain this demurrer, and having submitted the question to a jury, and the jury having found in favor of the defendant, under the record and evidence in this case we think it was clearly the duty of the court to have set aside the verdict and granted a new trial. But, as all the defense is clearly set up in the answer and evidence, we think there is no necessity for a re-hearing of the case, and under the law as we understand it the plaintiff in this case should have judgment for the face of the note and interest, and the attorney's fees therein mentioned.

For these reasons, the case is reversed, at the cost of the defendant in error, with instructions to the district court to enter judgment for the plaintiff in accordance with this opinion.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.