# STATE NAT. BANK v. ROSEBERRY.

No. 4013.   Opinion Filed May 11, 1915.

Rehearing Denied June 1, 1915.)

(148 Pac. 1034.)

1.    **SALES—Transfer of Title—Condition Precedent.**  Where in a sale of chattels, the vendor is to do something to the chattel to put it in that state in which the vendee is bound to accept it the performance of the thing is a condition precedent, and no title passes until the chattel is in a deliverable state and is accepted by the vendee.

2.    **SALES—Transfer of Title—Condition Precedent—Warranty.**  Where there is a sale of a chattel, and the vendor agrees to make the article right if the vendee finds it does not come up to the condition represented, this is not a condition precedent, but a warranty; and, the chattel having been delivered, the title passes.

3.    **APPEAL AND ERROR—Harmless Error—Admission of Evidence.**  There is a distinction between incompetent evidence and immaterial evidence and where evidence is admitted which is immaterial to any issue ,and this court can see from an examination of the entire record that there has been no miscarriage of justice, the error is harmless; but where evidence is wrongfully admitted, which should be excluded under some substantial rule, and which evidence tends to prove a material issue in the case ,the error is not harmless, and the judgment will be reversed.

(Syllabus by Devereux, C.)

*Error from County Court, Oklahoma County;*

*John W. Hayson, Judge.*

Action of replevin by N. E. Roseberry against the State National Bank.  Judgment for plaintiff on appeal to the county court, and defendant brings error.  Reversed.

For convenience the parties will be designated as they appeared in the trial ourt; that is, the plaintiff in error will be designated as the defendant, and the defendant in error as the plaintiff.

This was an action for replevin for two diamond ear screws instituted by the plaintiff against the defendant bank. The petition was in the customary form, the defendant filing no answer, as it was not required to do in the justice court. The evidence of the plaintiff tended to show that on August 9, 1910, she purchased the two diamond ear screws in controversy, from one Minton, in Oklahoma City, for the price of $256.90; that at the time of the purchase she paid $150 on the ear screws, and they were delivered to her and taken away by her from Minton's place of business. The plaintiff further testified: That when she purchased the diamonds she did not know anything about diamonds, and Minton told her that they were all right, and he would see that they were all right. She told Minton that she did not want him to switch diamonds on her, and she took the diamonds and went away from Oklahoma City on a vacation, and was gone about three months. That at the time of the purchase of the diamonds the plaintiff told Minton that she was not going to give him the full price, but that as soon as she found out about the diamonds she was ready to make the last payment, to which Minton assented. This witness further testified that when she got the diamonds Minton said they were all right, and she gave him a check for $150, and immediately left to catch the train; that Minton told her to have the diamonds tested, and she told him that she did not have time then, but would do so in the future, and that Minton said if they were not all right he would make them all right, and the plaintiff said to him that as soon as she found out, or as soon as they were made all right, she would pay the balance of the $106.90; that shortly after leaving Oklahoma City, she discovered that the diamonds were not matched, one of them being a yellowish color and not of the same weight as the other diamond; that on her return to Oklahoma City, after making this discovery, she told Minton that she was not satisfied with the diamonds for the reason above set out, and Minton said that he would make them all right; that there was going to be a wholesale man there the first of the month, and he would make them all right; and that the plaintiff left the diamonds with Minton for this purpose.

After this the evidence shows that she had several conversations with Minton, in one of which he told her that he would make the diamonds good as soon as the wholesale man came, and that she returned the diamonds to Minton for the purpose of having him make them correspond with each other in weight and color. In one of these conversations Minton told her that he had pledged the diamonds with the bank to secure his note for $700, and that at this time plaintiff told Minton that she wanted her diamonds, and when he made them all right she would pay the money; that she returned the diamonds to Minton because they were not what she bought and paid for. At the time Minton told her that he had pledged the diamonds with the bank to secure his individual note, the plaintiff objected, and told Minton to either make the diamonds all right or to return her the $150 she had paid, but that Minton said he was not financially able to return the money. It further appears that some time after these diamonds were turned over to him by the plaintiff to make them right, as she expressed it, Minton borrowed $715 from the Central Reserve Bank of Oklahoma City and pledged these ear screws to secure it. The Central Reserve Bank was bought out by the Oklahoma City National Bank, which received Minton's note and these diamonds in the trade, and the Oklahoma City National Bank was merged with the defendant, State National Bank, which took possession of the diamonds and Minton's note. The defendant demurred to this evidence in the trial court, which demurrer was overruled, and exceptions duly saved. The defendant offered testimony tending to contradict the plaintiff in regard to the return of the diamonds, but as the verdict of the jury was in favor of the plaintiff in the trial court, it is useless to summarize it, except as to a certain contract, which is as follows:

$106.90.                    Oklahoma City, Okla., Aug. 8, 1910.

"For value received I promise to pay to the order of D. C. Minton at their office in Oklahoma City, the sum of one hundred six and 90/100 dollars, payments as follows:   $25.00 on Aug. 23. $25.00 on Sept. 6.   $25.00 on Sept. 20th.   $31.90 Oct. 4, 1910. With interest at the rate of ten per cent per annum until the full

amount is paid. The express condition of this contract is the sale and purchase of one pair ear studs, style Tiffany Mountings, No. size 1½ C, less 1-64, to remain the property of the said D. C. Minton until the note, interest and costs are paid in full; that the above named parties have full power to declare this note due and enter upon the premises where the above described property may be found, take possession thereof, without opposition on my part, at any time they deem themselves insecure, and sell the same at public or private sale, without notice. The proceeds after expenses and interest and a reasonable attorney's fee are paid, to be applied on this note; and any balance then unpaid shall in consideration of the use and rent of said property be a valid claim against the vendee, and I also agree not to sell the above named property or remove it from the premises that I now occupy without first obtaining the written consent of D. C. Minton, under penalty of forfeiture of said property. N. E. Roseberry."

Indorsed on back: "D. C. Minton."

In regard to this contract the plaintiff testified that nothing was said at the time of the purchase of the diamonds, and at the time they were delivered to her, in regard to making any such contract, but Minton brought this contract to her as she was on the eve of leaving for her summer vacation, and she signed it without knowing its contents. Over the objection of the defendant the plaintiff was allowed to answer these questions:

"Q. Now, Mrs. Roseberry, you may state at the time of the giving of this note that has been offered in evidence whether or not you understood it, or if it was your intention and purpose to convey these diamonds to Mr. Minton. A. I did not; no such idea. Q. What was your idea? A. When he made them good I wanted the diamonds, and when he made them good I would pay him."

In another part of the examination of the plaintiff the question was asked her:

"Q. You may state whether or not it was your purpose and intention at that time to part with the title to these diamonds or to turn them over to Mr. Minton in any way. (Objected to, for the reason it is leading and suggestive. Exceptions overruled.)".

There was a verdict for the plaintiff in the sum of $150, and judgment thereon, and, after motion for new trial was overruled and exception duly saved, the defendant brings the case here on error.

*Wilson & Tomerlin* and *E. E. Buckholts,* for plaintiff in error.

*Harry White,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). The first assignment of error is whether the court erred in overruling the demurrer to the plaintiff's evidence, and this raises the question whether there was a sale to the plaintiff by which the title to the diamonds passed. In consideration of this question, under the well-established rule, we must assume that the evidence of the plaintiff and all reasonable deductions to be drawn therefrom are admitted to be true. *Reynolds v. Brooks,* 149 Pac. ——. The evidence establishes the fact on this demurrer that the plaintiff purchased these diamonds at the price of $256.90, paying thereon $150 and taking possession of the diamonds; that the vendor agreed that if on examination she discovered the diamonds were not what he represented them to be, he would make them all right, and the question presented is, Was there such a sale as would pass title to the plaintiff? In the *Elgee Cotton Cases,* 22 Wall. 180, on page 187, 22 L. Ed. 863, the court say:

"It must be admitted there is often great difficulty in determining whether a contract is itself a sale of personal property, so as to pass the ownership to the vendee, or whether it is a sale on condition, to take effect or be consummated only when the condition shall be performed, or whether it is a mere agreement to sell. It is doubtless true that whether the property passes or not is dependent upon the intention of the parties to the contract, and that intention must be gathered from the language of the instrument. There are, however, certain rules for the construction of such contracts, which are well settled in England, and, we think, also in this country. Mr. Justice Blackburn, in his work on Sales, states two of them, and Mr. Benjamin, in his treatise, adds a third. They are as follows:

"First. 'When, by the agreement, the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property.'

"Second. 'Where anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring, or testing the goods, where the price is to depend on the quantity or quality of the goods, the performance of these things shall also be a condition precedent to the transfer of the property, although the individual goods be ascertained and they are in the state in which they ought to be accepted.'

"Third. 'Where the buyer is by contract bound to do anything as a consideration, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer."

"These may be regarded as rules for ascertaining the intention of the parties. They are in most cases held to be conclusive tests."

Applying the rule laid down in this case, which seems to have been followed by all of the states, was the contract entered into at the time the diamonds were purchased such a one as would pass title to the purchaser? We think it was. This case does not come under the first rule laid down in the *Elgee Cotton Cases, supra,* because nothing was to be done by the vendor in this case for the purpose of putting the diamonds into that state in which the purchaser was bound to accept them. The purchaser accepted them at the time with the agreement on the part of the vendor that if not satisfactory he would make them right. This was not a condition precedent to the vesting of the title, but a warranty only on the part of the vendor that if the diamonds were not satisfactory he would make them so. That being the case, the title passed, as against this demurrer, at the time that the diamonds were delivered. We do not consider the effect of the contract

above set out, because that was part of the defendant's evidence, and consequently was not before the court when the demurrer was passed upon, and cannot be considered by us in reviewing the ruling of the court on this demurrer. The question, then arises that, if the property passed under the circumstances of this case, could the plaintiff maintain replevin against the bank? We think she could. In Shinn on Replevin, sec. 81, it is decided that a bailor may bring replevin against a third person who has obtained possession from the bailee, and the possession is wrongful as against the bailor. This is for the reason, that where the bailee himself terminates the bailment by parting with possession, the third person, who had obtained possession otherwise than in accordance with the bailment has a wrongful possession as against the bailor, and the person getting possession from the bailee gets no better right than the bailee himself had, although he be a *bona fide* purchaser. In the note to this section the author says:

"Where the bailee has sold the goods to one who had notice of the special agreement between the bailee and bailor that the title was to remain in the latter until the price was paid, the bailor was permitted to recover the goods from such third person. The purchaser acquired no better title than the bailee had. *Patterson v. Stevenson,* 2 Pears. (Pa.) 205."

This volume is not in the library, and we have had no opportunity to examine the case, but cite it from the notes as given by Mr. Shinn.

*Branson v. Heckler,* 22 Kan. 610, was a case of replevin where one McNear, residing in Ohio, had engaged a car to ship certain goods to Kansas. Heckler had certain buggies in Ohio which he wished taken to Kansas, and made an arrangement with McNear by which the buggies should be placed in the car chartered by McNear, Heckler paying his proportion of the freight. The bill of lading was issued to McNear for the buggies, as well as the other property in the car. Upon arriving in Kansas McNear did not have sufficient money to pay the freight, and he pledged these

buggies with Branson, who took actual possession of the buggies and advanced $148 to pay the freight on the entire car. Heckler brought replevin against Branson for the possession of the buggies, and recovered. There was no allegation which proved that Branson had any notice of the true ownership of the buggies when he advanced the money. The syllabus in that case is as folows:

"Possession, through *prima facie* evidence of title, is only *prima facie,* and subject to be overthrown by other testimony; and, to acquire title, purchaser must be made from the owner, or one authorized to sell. The possession of goods by a bailee or agent gives him no power to pledge them for a debt of his own, except by * * * actual authority received from the owner."

In this case the court also holds that before maintaining his action to recover the possession of the buggies it was not necessary for Heckler to tender or pay any part of the freight money which Branson had advanced.

We are therefore of the opinion that under the plaintiff's evidence, the property passed to these diamonds at the time they were delivered to her upon the payment of $150, and that the agreement of the vendor to make them right if they did not suit was a warranty of quality, and not a condition precedent, and did not prevent the property from vesting at that time. The demurrer to the evidence was therefore properly overruled, but it must be understood that what is above said is based entirely on the plaintiff's evidence, and the error assigned in overruling the demurrer thereto.

The second assignment of error is to the admission of the evidence of the plaintiff in regard to her intention in signing the contract above set out. The question and answer objected to are as follows:

"Q. Now, Mrs. Roseberry, you may state at the time of the giving of this note that has been offered in evidence whether or not you understood it, or if it was your intention and purpose to convey these diamonds to Mr. Minton?"

Proper objection was made to this question, which was over-ruled, and the witness answered:

"A.   I did not; no such idea.   Q.   What was your idea?"

Objection was properly made to this question, and the witness answered:

"A.   When he made them good I wanted the diamonds and when he made them good I would pay him."

The contract in this case is clear and unambiguous, and contains the express provision that the title is to be retained in Minton until the price was paid.   Whether this contract was germane to the controversy admits of doubt.   The bank does not claim under it. The contract was never assigned to the bank, nor was there any privity of contract between the bank and the plaintiff, but this evidence was prejudicial to the defendant on the main issue.   The contract had been offered by the defendant, and no cross-petition in error is filed challenging the right to introduce it.   In 4 Wigmore on Evidence, sec. 2471, it is said:

"When a transaction has been voluntarily embodied in a single document, no other utterance of intent or will on the same subject can be given legal effect.   Hence such a declaration is excluded from consideration even in the process of interpretation, not because it would not for that purpose be useful, but because it would be improper for the other purpose."

This is not in conflict with the case of *Humphrey v. Timken Carriage Co.,* 12 Okla. 413, 75 Pac. 528.   In that case there was a mutual agreement between the parties at the time that the written contract was entered into that Humphrey should not be bound by it, and that Berkey was the real purchaser of the goods.   The court ruled that, where there was this mutual understanding at the time of the entering into the contract, parol evidence was competent. to show it; but in the case at bar there was no claim that there was a mutual understanding between Minton and the plaintiff

that the contract meant other than it said. Our ruling that this evidence is not competent is sustained by a line of decisions of our Supreme Court. See *Guthrie & Western R. R. Co. v. Rhodes,* 19 Okla. 21, 91 Pac. 1119, 21 L. R. A. (N. S.) 490; *Hardin v. Kirby,* 25 Okla. 479, 106 Pac. 837. It may be said that as the bank did not claim under this contract and had no assignemnt of it, the admission of this testimony is harmless error, but we do not think so. In *Hales v. Kerr,* 15 Am. & Eng. Ann. C. 448, it is held that where incompetent evidence is admitted, there must be a new trial, although there is enough competent evidence in the rcord to support the verdict, because no man can tell what effect the incompetent testimony had on the minds of the jury. This rule is modified by section 6005, Rev. L. 1910, to this extent: That where evidence immaterial to the issue has been either rejected or admitted wrong-fully, the judgment will not be reversed unless, from an inspec-tion of the entire record, it appears that there has been a mis-carriage of justice. Evidence may be very material to the issue, but incompetent under some positive rule of law. Parol evidence to vary a written instrument is an illustration of the distinction. This evidence may be very material to the issue, but it is prohibited by a substantive rule of law, and, if admitted, no one can tell what influence it may have on the minds of the jury. On the other hand, evidence which is immaterial, and which tends to prove no controverted issue, will not be ground for a reversal of the judg-ment, if improperly admitted.

In the case at bar we cannot say that this evidence did not produce prejudice. The very point at issue was whether the title to these diamonds passed to the plaintiff, and some of the evidence introduced by the defendant show that they did not was this contract. To allow the plaintiff to contradict this contract, and to say that she did not mean what the contract itself says she did, is prejudicial error.

*Noland v. Melvin,* 147 Pac. 307 (not yet officially reported), is not in conflict with these views. In that case the court say:

"In our judgment, the verdict returned by the jury was the only one that reasonably could have been expected. If it had been in favor of the plaintiff, the trial court probably would have set it aside. In such circumstances, we would not be justified in reversing the judgment of the court below on the ground of misdirection of the jury, or the improper admission or rejection of evidence" (citing section 6005, Rev. L. 1910).

In the case at bar the evidence admitted bore directly on the issue in the case, and we cannot say that it had no effect on the minds of the jury, or that the verdict would have been the same if this evidence had been excluded.

We, therefore, recommend that the judgment below be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.