THE COLONIAL AND UNITED STATES MORTGAGE COM-PANY (LIMITED), *Appellee*, v. J. P. ELSEA *et al.*, *Appellants.*

No. 17,119.

SYLLABUS BY THE COURT.

1. FENCES—*Inclosure of Another's Land—Liability for Rent.* One who either alone or in coöperation with adjoining land-holders maintains a fence so as to inclose the land of another with his own, and treats the entire inclosure as his pasture, excluding all other stock therefrom, is liable for rent to the owner of the tract so inclosed.

2. ——— *Same.* Under such circumstances his liability is not affected by the existence of a public road through the in-closure, across which he maintains gates, or by the fact that he has made an offer, which was rejected, to share with the owner of the inclosed land the expense of fencing so as to separate their tracts.

Appeal from Barber district court. Opinion filed June 10, 1911. Affirmed.

*Seward I. Field,* for the appellants.

*A. L. Noble,* and *J. N. Tincher,* for the appellee.

The opinion of the court was delivered by

MASON, J.: The Colonial and United States Mort-gage Company on January 15, 1906, sued J. P. Elsea and J. M. Thralls upon an implied contract to pay rent

for about five quarter sections of land belonging to it which were within an inclosure used by them as a ranch and pasture.  The plaintiff obtained judgment and the defendants appeal.  The case was tried upon an agreed statement, which showed these facts, among others:

From a time previous to 1901 the defendants used as a pasture a tract of land about three miles wide and five and a half miles long, inclosed by a fence, a portion of which they maintained.  They owned the greater part of the land inclosed, which included, besides that of the plaintiff, school land, government land, and land belonging to other persons.  Prior to 1904 the defendants leased a part of the plaintiff's land and paid rent therefor.  Then they notified it that they were reducing their stock and did not have sufficient cattle to graze their own land, and did not want to use its land further.  Thereafter they paid no rent but continued to use the entire pasture in the same way as before, except that they maintained fewer cattle.  During the whole time the inclosure was kept and maintained as the defendant's pasture, "the defendants used the whole of the pasture in the way of turning their own cattle thereon for pasture and taking in cattle of third persons, for pay, and pasturing them thereon, from time to time, and the defendants excluded all other stock from the pasture, and treated the whole of the land inside of the pasture in the same way that they used and treated their own pasture land therein, and the fences surrounding such pasture were kept up and maintained by agreement between the defendants and the owners and occupants of the adjoining pastures, whereby certain portions of the fence were set off to the defendants to build and maintain and the other portions were set off to the other adjoining occupants, and were kept up and maintained by them, pursuant to such agreement." At all times the defendants treated the entire inclosure

as their own pasture. No one else used any of the lands lying therein.

We think these facts show that the defendants were liable, and that the judgment was properly rendered. The statute (Gen. Stat. 1868, ch. 55, § 20, Gen. Stat. 1909, § 4709) makes the occupant of lands, without special contract, liable for the rent to any person entitled thereto. "When a person fences in the lands of another, and uses them for pasturing purposes the same as if he were the owner, payment ought to be made therefor or some adequate reason given for not doing so." (*Simmonds v. Richards*, 74 Kan. 311, 314.) Our statute (Gen. Stat. 1868, ch. 40, § 1 *et al.*, Gen. Stat. 1909, § 3728 *et seq.*) permits the owner of animals to allow them to run at large, without becoming liable for their trespass upon uninclosed lands. (*Railway Co. v. Olden*, 72 Kan. 110.) But it does not exempt him from liability if he purposely pastures them upon the land of another, or appropriates another's pasture to his own use, for this is in effect the taking possession of his neighbor's property.

In *Pace v. Potter*, 85 Tex. 473, one who put cattle upon his own land was held not to be liable in damages because they pastured upon the land of a neighbor, where both tracts were included within an inclosure made by fences built entirely by other persons. It was there said, however, that "the defendant would have been liable to the plaintiff if he had taken exclusive possession of the land inclosed." (p. 477.) In *Lazarus v. Phelps*, 152 U. S. 81, it was held that under similar circumstances the owner of a part of the land inclosed would be liable in case he stocked his own land with cattle in excess of the number it would sustain, and permitted them to pasture upon the unoccupied land of a neighboring proprietor. The court there said, speaking of a statute requiring landowners to fence against cattle running at large:

"It could never have been intended, however, to au-

thorize cattle owners deliberately to take possession of such lands, and depasture their cattle upon them without making compensation, particularly if this were done against the will of the owner, or under such circumstances as to show a deliberate intent to obtain the benefit of another's pasturage.   In other words, the trespass authorized, or rather condoned, was an accidental trespass caused by straying cattle.   If, for example, a cattle owner, knowing that the proprietor of certain lands had been in the habit of leasing his lands for pasturage, should deliberately drive his cattle upon such lands in order that they might feed there, it would scarcely be claimed that he would not be bound to pay a reasonable rental.   So, if he lease a section of land, adjoining an uninclosed section of another, and stock his own section with a greater number of cattle than it could properly support, so that, in order to obtain the proper amount of grass, they would be forced to stray over upon the adjoining section, the duty to make compensation would be as plain as though the cattle had been driven there in the first instance."   (p. 85.)

In *Durst v. Mann,* (Tex. Civ. App. 1896) 35 S. W. 949, the distinction was pointed out between using an inclosure which resulted from the acts of other persons, and deliberately fencing the land of another.   The court said:

"The principle decided is that, where other contiguous and surrounding owners of land fence the same so as to inclose lands of others, such other persons will not be liable to each other for rent upon pasturing their cattle on the lands so inclosed.   As to such owners, their lands are unfenced commons, just as they were before their lands were inclosed by surrounding owners.   The case before us is essentially different.   In this case Mrs. Mann  .  .  .  erected the fence, surveying the line along the outside lines of some of plaintiff's land on two sides, so as to intentionally embrace it in the inclosure.   She kept up the fences, excluded the public from pasturage on the land in the pasture. .  .  .   These facts show an intentional appropriation and use of plaintiff's land for pasture, and exclusive possession of it.  .  .  .   The status of plaintiff and defendant in respect to their lands was not the same as it was before defendant built the fence and inclosed the

land. It should not be questioned, under the facts, that defendant had by inclosure made by her intentionally possessed herself of plaintiff's land, and used it for her own benefit." (p. 950.)

In the present case the defendants, with adjoining owners, coöperated in maintaining the fence, agreeing among themselves as to the part each should keep up. In effect they maintained it jointly. So far as the plaintiff is concerned the situation is as though the defendants were themselves responsible for the entire fence. The record does not disclose whether they stocked the pasture with more cattle than their own land would support. Nothing is shown bearing on this matter except that after they ceased paying rent to the plaintiff they turned in fewer head than before. In view of the other facts admitted the number of cattle actually pastured in unimportant. The agreement shows that the defendants deliberately appropriated all the land in the inclosure to their own exclusive use, and asserted dominion over it. This sufficiently appears from the recitals that they treated the entire inclosure as their own pasture, and excluded all other stock therefrom. Having taken possession of the plaintiff's land they were under an obligation to pay for it, whether they derived any actual benefit from it or not.

The agreed statement also set out that there was a highway through the pasture, across which the defendants maintained gates. In view of the admissions referred to, the existence of the road does not prove that the inclosure was open to the use of the public as a pasture. It was admitted that if Elsea were sworn he would testify that the defendants offered to share with the plaintiff the expense of fencing so as to separate its lands and theirs, but that the offer was not accepted. Construing this as an admission that such a proposal was made and rejected, it does not relieve the defendants from liability, as it does not amount to a denial of their appropriation and exclusive use of the land.

The court of appeals of one of the several districts of

Texas has held that no recovery can be had where the land of the plaintiff is entirely surrounded by the land of the defendant, so that the latter in inclosing his own land necessarily includes that of the plaintiff. (*Abbey v. Shiner*, 5 Tex. Civ. App. 287.) The contrary has been held by the court of another district. (*St. Louis Cattle Co. v. Vaught*, 1 Tex. Civ. App. 388.) The supreme court of Texas has noted the conflict, but appears not to have had occasion to determine the disputed question. (*Mann v. Durst*, 90 Tex. 76.) Whatever may be the rule in that situation, it can not avail the defendants here. Their land did not surround that of the plaintiff, and a considerable portion of the fence stood upon the land for which it is asking rent.

The judgment is affirmed.