## FIRST NAT. BANK OF LAWTON *et al.* v. THOMPSON.

### No. 2360.    Opinion Filed December 20, 1913.

#### (137 Pac. 668.)

1. **SET-OFF AND COUNTERCLAIM — Action in Tort—Bills and Notes—"Set-Off."** Under the statute which limits the use of a set-off thus, "A set-off can only be pleaded in an action founded on contract, and it must be a cause of action arising upon contract or ascertained by the decision of a court," a defendant, when sued in tort for damages for the wrongful conversion of a span of mules, cannot use a note given by plaintiff to a stranger to the suit, assigned to defendant, as a set-off.

2. **SAME—"Counterclaim."** Neither, in such suit, can the notes be used as a counterclaim, under a statute providing that "a counterclaim * * * must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim or connected with the subject of the action," where the note does not arise out of, and is in no way connected with, and has no relation to, the contract or transaction made the basis of plaintiff's suit, and which does not come under certain exceptions mentioned in the statute.

3. **SAME.** Neither can such note be set up, in such suit, as a basis for affirmative relief, when it is not concerning the subject of plaintiff's action, is in no way related to or connected therewith, and where it is not necessarily or properly involved in the action for a complete determination thereof, or settlement of the questions therein involved.

4. **TROVER AND CONVERSION—Measure of Damages—Right to Elect.** In a suit for damages for the conversion of a span of mules, ordinarily the measure of the damages is the fair market value of the mules at the time and place of the conversion, together with lawful interest thereon, and a fair compensation for the time and money properly expended in pursuit of the property. However, if plaintiff has prosecuted his suit with diligence, he can elect to have as his damages the highest fair market value of the property at any time between the conversion and the verdict, without interest, together with proper cost of pursuit.

5. **APPEAL AND ERROR—Cure of Error—Evidence—Elements of Damage.** An error in the improper admission of evidence as to nonrecoverable elements of damage is cured when the court's instructions forbid a recovery of any sum on account of such improper elements.

6. **SAME — Harmless Error — Verdict — Rendition.** In a suit commenced prior to statehood, though tried after the erection of the state, the parties were entitled, as a matter of law, to a unanimous verdict of the jury, and an instruction that nine of the jury concurring could return a verdict was erroneous; but, where the verdict notwithstanding such instruction was unanimous, it was error without injury.

(Syllabus by Brewer, C.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Action by F. F. Thompson against the First National Bank of Lawton and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Stevens & Myers* and *T. B. Orr,* for plaintiffs in error.

*W. E. Earl,* for defendant in error.

BREWER, C. F. F. Thompson, defendant in error, as plaintiff below, brought this suit against the First National Bank of Lawton and Chas. C. Hammonds, as sheriff, to recover damages for the unlawful conversion of a span of mules, alleging that the defendant Hammonds, as sheriff, had taken them under a writ of attachment, issued and running against persons other than the plaintiff. The defendant Hammonds filed a general denial for answer. The defendant bank alleged that it was an attachment creditor of one J. W. Morrison, and that the mules sued for were in fact the property of the judgment debtor, and that the plaintiff, Thompson, had confederated with such judgment debtor to wrong, cheat, and defraud defendant, and to make the false claim that the property belonged to plaintiff, while in fact it belonged to Morrison, and was subject to the attachment, and therefore properly taken. The bank then proceeded to set up what it denominates a counterclaim, and, to support same, alleged in substance that the plaintiff did, on the 1st day of December, 1906, make, execute, and deliver to the said J. W. Morrison his certain promissory note in the sum of $1,100, whereby the said Thompson agreed to pay to the said Morrison or order the said sum of $1,100 for value received, with interest at the rate of 10 per cent. per annum from date until paid, on or before the

1st day of December, 1907; that the said Morrison, being desirous of securing a loan from the bank, executed the note upon which the attachment in plaintiff's petition complained of was executed, and among other things as collateral to said note at the time of the execution thereof, did sell, assign, transfer, set over, and deliver unto the bank the aforesaid note, and thereby the said bank became and is now the owner and holder thereof; that the plaintiff has failed and refused to pay said note or any part thereof as requested so to do; and that, by reason of the premises, plaintiff now owes the bank the sum of $1,100, with interest. The counterclaim closes with a prayer for judgment against the plaintiff for that sum and costs. The plaintiff attacked this counterclaim by demurrer, the overruling of which he objected to, and filed unverified reply. The cause was submitted to a jury, and a verdict was rendered in favor of the plaintiff in the sum of $500, with interest thereon from the time of conversion of the mules. From a judgment founded on this verdict, the defendants below appeal to this court on properly certified case-made.

The first point urged for reversal is:

"The court erred in overruling a motion of the plaintiffs in error for a continuance of said case."

The continuance mentioned was asked for in the middle of the trial on the ground of surprise, and arose in this way: After the plaintiff had testified in the case, and had later been recalled, and was being cross-examined by defendant, he was shown the note by defendant's counsel, and asked: "You owed Morrison a note at that time for $1,100, didn't you?" This was objected to by plaintiff's counsel as not proper cross-examination. The court replied that it was not proper cross-examination, but that plaintiff would be a competent witness, and the following examination was had:

"Q. Is that your signature? A. It is not. Q. That is not your signature? A. It is not. Q. Do you know who wrote that on there? A. I do not. Q. You don't know who wrote that on there? A. No, sir; I do not. I never saw it before. Q. Never seen that before? A. I didn't."

After completing a lengthy cross-examination, and hearing another witness, counsel for the bank asked for a continuance on the ground of surprise, and based the same upon the testimony he had brought out, over objections. from the plaintiff, relative to the execution of the note. It will be noted that the defendant brought out this evidence, not as proper cross-examination, but as its own evidence on its counterclaim, and defendant insists that, inasmuch as its counterclaim declared on a written obligation, and the reply thereto was unverified, therefore the execution of the instrument was admitted, and plaintiff could not deny the same. Of course this is ordinarily true under our statute (section 5648, Comp. Laws 1909 [section 4759, Rev. Laws 1910]) and the decisions construing same (*G. & W. R. Co. v. Rhodes,* 19 Okla. 21, 91 Pac. 1119, 21 L. R. A. [N. S.] 490; *Commonwealth Nat. Bank. v. Baughman,* 27 Okla. 175, 111 Pac. 332; *Railway Co. v. Cake,* 25 Okla. 227, 105 Pac. 322; *St. L. & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470); but, as we view this phase of the case, it is hardly necessary to discuss the rather peculiar situation presented in the record, for we do not believe that the counterclaim as alleged herein was available to defendant, either as a counterclaim or a set-off, or as relief sought.

It may be well to consider, somewhat in detail, what is proper to assert by a defendant when sued. Under section 4745, Rev. Laws 1910, an answer shall contain, first, a general or specific denial; second, *a defense, counterclaim,* set-off, or a right to relief *concerning the subject of the action;* third, these defenses of counterclaim, set-off, or for relief, may be either legal, equitable, or both. They must refer in an intelligible manner to the cause of action they are intended to answer.

Section 4746, Rev. Laws 1910, defines and applies the terms used above thus:

"A counterclaim * * * must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and *arising out of the contract or transaction* set forth in the petition as the foundation of plaintiff's claim or connected with the subject of the action. * . * * " (Italics ours.)

Certain exceptions, expanding the rule in cases of wrongful attachment when set aside, and giving an individual defendant the right, whether it exists in his codefendant or not, need no critical examination at this time.

On the question of affirmative relief by defendant, it is said:

"The right to relief concerning the subject of the action mentioned in the same section *must be a right to relief necessarily or properly involved in the action for a complete determination thereof, or settlement of the questions involved therein.*" (Italics ours.)

Section 4747, Rev. Laws 1910, limits the use of a set-off thus:

"A set-off can only be pleaded in an action founded on contract, and it must be a cause of action arising upon contract or ascertained by the decision of a court."

The answering defendant denominates his plea a counter-claim; but the court must test a pleading by its averments, and a mere name applied to it will not alone determine its character. *Brown v. Massey,* 19 Okla. 487, 92 Pac. 246; *Meeker v. Dalton,* 75 Cal. 154, 16 Pac. 764; *Kimball v. Connor,* 3 Kan. 414. This part of the answer certainly cannot, technically speaking, be classed as a counterclaim. It does not arise out of the transaction—the tort of converting the mules—which is not only the foundation of but is all of plaintiff's cause of action, nor is it in any way connected with the subject of plaintiff's action, nor does it fall within any exception named in the statute. Pomeroy's Code Remedies (4th Ed.) 618 *et seq.; Allison v. Shinner,* 7 Okla. 272, 54 Pac. 471; *Wyman v. Herard,* 9 Okla. 35, 59 Pac. 1009.

It cannot avail as a right to relief, because it is not concerning the subject of plaintiff's action, nor is the right to relief necessarily or properly involved in the action for a complete determination or settlement of the questions involved. The defense pleaded has not, in the remotest degree, any connection or relation to the cause of action, or subject of the action, or transaction, upon which plaintiff's action is founded.

It cannot be used as a set-off, under the Code, for the simple reason that it is based on contract, and the cause of action sued on is purely a tort, in no sense growing out of or founded upon

a contract or breach of one. In *Kennett v. Fickel,* 41 Kan. 212, 21 Pac. 93, it is said:

"The first point made is that the court erred in striking out all of Kennett's answer except a general denial. This answer consisted, first, of a general denial, and second, a cause of action upon a promissory note alleged to have been executed by George W. Fickel and Catharine E. Fickel, which was pleaded by way of set-off. In pleading the set-off, it was incidentally stated that George W. Fickel had an interest in the property, and also that one Henry Perry claimed to be the owner, and had replevied the same from Kennett, which action was still pending and undetermined. He asked that both of these parties be brought in, and for judgment upon his promissory note for the sum of $247, and interest thereon. The court ruled correctly in striking this count from the answer. The second cause of action, setting forth a set-off, cannot be pleaded as a defense in an action of replevin. Such an action is founded upon the tort or wrong of the defendant, and not upon contract; and section 98 of the Code specifically provides that 'a set-off can only be pleaded in an action founded on contract.' If either of the parties named owned and had the right of possession to the property, and the plaintiff wished to rely upon that fact, he could have shown it under the general denial. *Wilson v. Fuller,* 9 Kan. 176; *Yandle v. Crane,* 13 Kan. 344; *Bailey v. Bayne,* 20 Kan. 657; *Holmberg v. Dean,* 21 Kan. 73."

Neither can a tort be set off against a suit on contract, except it be within the exceptions named in our statute. In the case of *Carver v. Shelley,* 17 Kan. 474, it is said by Valentine, J.:

"(2) The defendant does not claim that his supposed set-off is a counterclaim, and it is not. It has no connection with the 'foundation' or 'subject' of the plaintiffs' action. Civil Code, sec. 95. (3) Neither is his supposed set-off a set-off. A set-off 'must be a cause of action arising upon contract, or ascertained by the decision of a court.' Civil Code, sec. 98. There is no pretense in this case that the defendant's set-off is founded upon any contract, or upon the decision of any court. It is founded purely and entirely upon a tort."

The following authorities bear on the question, but are not cited as strictly in point: *Van Arsdale et al. v. Edwards,* 24 Okla. 41, 101 Pac. 1123; *Johnson v. Acme, etc.,* 24 Okla. 468, 103 Pac. 638; *St. L. & S. F. R. Co. v. Bradford,* 18 Okla. 154, 88 Pac. 1050; *Richardson v. Penny,* 10 Okla. 32, 61 Pac. 584;

*Willoughby v. Ball,* 18 Okla. 535, 90 Pac. 1017. Nor have we overlooked the holding of a number of courts, that a party having a cause of action founded in tort may waive the tort, and declare on an implied contract growing out of same, and thus make use of it as a set-off. Bliss, Code Pleading (2d Ed.) 381, and authorities cited.

This pleading, then, being an improper one, as presenting a question that could not be properly raised in this suit, defendant has suffered no injury, regardless of how badly he was surprised, and regardless of whether, having brought out the evidence, he could ordinarily have taken advantage of the result he obtained, which is not decided. This also eliminates the question raised regarding requested instructions on this phase of the case.

2. The second point urged is the admission of incompetent evidence, and refers first to the testimony of plaintiff denying the execution of the note, which was caused to be repeated by plaintiff after being first brought out by defendant. This point fails under the first subdivision of this opinion. The other evidence complained of referred to the measure of plaintiff's damages, and goes to that offered as to the proof of the value of the mules and also to certain damages claimed for the loss of their use.

There was some evidence offered as to the value of the mules that was entirely competent by both parties. The evidence as to damage suffered by plaintiff by being deprived of the use of the animals, whereby he failed to make so valuable a crop as he otherwise would have made, was incompetent, but rendered entirely harmless by the court, in refusing to allow plaintiff any such damages. The jury were instructed correctly (section 2910, Comp. Laws 1909) that, this being a suit for conversion, all that could be recovered was the value of the animals, and interest. It may be added that the recovery was based on this positive instruction of the court. Therefore the admission of other elements was expressly taken from the jury, and did not enter into the verdict.

3. The third point urged in the brief—that the court should have sustained defendants' demurrer to the evidence—is entirely without merit. Plaintiff's proof of ownership and possession of

the mules, and the wrongful taking and conversion of same by the defendants, was ample, clear, and convincing. Very little evidence was produced by defendants controverting same. On this point, plaintiff's evidence greatly preponderated. In fact, on the question of the ownership of the mules, very little of defendants' evidence was competent. The most of it consisted of statements, oral and written, that Morrison, the defendant in the attachment suit, had, in the absence and without the knowledge of plaintiff, claimed to be the owner. This was only competent on the question of good faith and want of malice in taking the mules, and, as a malicious taking had been set up, this evidence was competent, but not as against plaintiff's title.

4. Under the fourth point made by defendants, it is claimed that the court erred in refusing to give three instructions offered by them. The first was "not to allow damages to plaintiff for loss of or failure of crops." The court, as has been seen, refused to allow such recovery, and none such was had. The next was a refusal to give defendants' instruction on the measure of damages. The one given by the court is almost identical with the one refused, and was stronger in defendants' favor than the one it had offered. The next one refused referred to the $1,100 note, upon which relief was asked, and has been disposed of elsewhere.

5. The next and last point urged is that the court erred in instructing the jury that three-fourths of the jurors could return a verdict, as the suit was filed before statehood; inasmuch, however, as a unanimous verdict was returned, this was error without injury, and will not reverse the case. We have examined the entire record, and feel like the verdict was right—in fact we do not see how any jury could have found otherwise—and that there has been no substantial error in the case.

The judgment should be affirmed.

By the Court: It is so ordered.