## TULSA PETROLEUM CORPORATION et al. v. WESTMORELAND.

No. 27147.  June 15, 1937.

Rehearing Denied July 13, 1937.

W. W. Pryor and Hugh M. Sandlin, for plaintiff in error Tulsa Petroleum Corporation.

Anglin & Stevenson, and Vernon Roberts, for plaintiff in error Limestone Oil & Gas Company.

Don Wilbanks, for defendant in error.

HURST, J. S. P. Westmoreland, on December 19, 1933, instituted this action against the Tulsa Petroleum Corporation and the Limestone Oil & Gas Company to recover damages for their laying and maintaining a two-inch oil pipe line across the south end of his quarter section of land for a distance of 80 rods. The land lay north of and adjoining a section line highway running east and west. Approximately ten years prior to this action plaintiff sold a right of way to an electric company for a high line across this land parallel to the highway, and, about a year later, removed his fence from the section line boundary back six or eight feet to the outside line of the electric wire poles utilizing them as fence posts, thus leaving six or eight feet of his land unfenced. This strip of land was not cultivated or farmed by plaintiff. Sometime about a year before the institution of this action the Tulsa Petroleum Corporation, through its employees, went upon this unfenced portion of land and laid the line complained of along the surface except at one crossing. Defendants contend that the line was laid in the highway, but the indisputable import of the evidence is that it varied from two, three, to four feet from the fence, and over the boundary. After this line was installed it was used to convey oil from the Limestone Company's lease, among others, a quarter of a mile west of plaintiff's 40 to Holdenville to the east. That company operated a pumping station on their lease for pressure, and inspected and maintained the line across plaintiff's land, but owned no interest therein. So far as the evidence shows, the maintenance consisted in repairing some small leaks, of which plaintiff knew and about which he made no complaint, and the repair of two large ones occurring after the institution of this suit. At the time of the installation of the line plaintiff was fully cognizant of its location and purpose, he having been present during the time and "talked to some of the boys." In response to the question, "Did you try to stop them?" he answered: "No, I never."

The action was filed originally in the justice court by bill of particulars in two counts, the first seeking $100 actual damages, and second, in addition, seeking $100 exemplary damages. After judgment for plaintiff, defendants appealed to the county court of Hughes county, where the

case was tried de novo to a jury. Each count was submitted to the jury, and a lump sum verdict and judgment rendered against the defendants for the sum of $100. The defendants appeal to this court, and file a joint brief, raising the questions we here discuss.

1. On the question of actual damages, the court instructed in effect that plaintiff might recover the difference in the value of his land immediately before and after the laying of the line. Ample evidence was submitted by plaintiff to support a verdict for $100 under this theory; he saying $100, one of his witnesses $150, and another $400. Whether the theory itself was the correct measure is a distinct question, and one which we will not decide because waived by failure to discuss, argue, or support by authority in this court. Chicago, R. I. & P. Ry. Co. v. Excise Board of Oklahoma County (1934) 168 Okla. 428, 33 P. (2d) 1081.

2. The two breaks in the oil line which resulted in material damage to a part of plaintiff's land appear clearly to have occurred after this suit was filed, and the evidence thereof was objected to. However, on this point the court, in instruction No. 4, told the jury: "You are further instructed that you cannot consider in this case any damage done to the plaintiff's land after December 19, 1933, the date this suit was filed." We are of the opinion that such instruction rendered the error harmless. First Nat. Bank v. Thompson (1913) 41 Okla. 88, 137 P. 668; Chicago, R. I. & P. Ry. Co. v. Taylor (1935) 173 Okla. 454, 49 P. (2d) 721.

3. Defendants' contention that plaintiff licensed the acts complained of, presented in the lower court by a requested instruction covering license, is supported by the facts showing that at the time the line was being laid he was fully aware of it, knew its purpose, size, location, and the fact that it was over his boundary, that he was present, "talked to some of the boys," and did not try to stop them. License is defined, Haas v. Brannon (1924) 99 Okla. 94, 225 P. 931, as follows:

"License is an authority to do a particular act or series of acts upon another's land without possessing an estate therein. * * *"

It may be created without more formality than words and acts, may be implied from acquiescence, and requires no consideration. 37 C. J., Licenses, pp. 282, 283. The one element essential to its creation is permission or consent of the landowner. Knowles v. Dow (1851) 22 N. H. 387; Hallock v. Suitor (Ore. 1900) 60 P. 384; Pitzman v. Boyce (Mo. 1892) 19 S. W. 1104: 37 C. J., p. 283, note 20. Having this in mind, we have given careful thought to the extent to which plaintiff consented by his conduct to the invasion and occupancy of his land. Assuming he consented to the laying of the line, still it does not follow that he consented also to the continued use and occupation of his land without pay, and we are of the opinion that the evidence is insufficient from which to so find. It may be anticipated by a landowner, we think, that an oil pipe line company utilizing his land will expect to pay therefor. The facts suggesting that plaintiff knew the company at the time may not have known it was upon his land are too few; only that the fence had been moved back long before, and the land outside was not cultivated or used. The attachment of the fence to the outside of the poles suggests it had been arbitrarily placed there for their utilization; whether any distinguishing contours or marks existed showing the boundary is not disclosed, neither the location of plaintiff's adjoining neighbor's fences nor whether all fences along the road were in line with his appears. Further, at the time, Nazworthy v. Illinois Oil Co. (1936) 176 Okla. 37, 54 P. (2d) 642, had not been decided, and no showing is made of the custom of paying or not paying abutting landowners even though the line is laid in the highway. In the absence of facts showing plaintiff should not reasonably have expected the company would pay, consent by his failure to object cannot be inferred. The burden of establishing these facts, as well as the conclusion of consent, was upon defendants, and under the facts shown the conclusion is left to conjecture. Therefore, no instruction submitting the question of license to the jury was needed. First Nat. Bank v. Madill Produce Co. (1930) 144 Okla. 67, 289 P. 714.

4. Defendants further contend that plaintiff was estopped by his conduct from complaining of the acts. The estoppel, of course, was a matter of defense, and the burden of bringing forward the facts from which it could be inferred was upon defendants, Newman v. Roach (1929) 140

Okla. 210, 282 P. 287. In Schaidt v. Blaul (1886) 66 Md. 141, the court held that where one stands by watching another lay out money on his land, he is not estopped where the title was equally known to both; and this holding is consistent with the general principles of estoppel. Bigelow on Estoppel (6th Ed.) p. 681; 21 C. J. Estoppel, p. 1217, note 73. Thus, inasmuch as defendants failed in their proof to show they did not know they were upon plaintiff's land, and that plaintiff should reasonably have known the same, so creating a duty on him to speak, and transforming his silence into a misleading with respect to their rights, there was no evidence from which the jury could have found an estoppel.

5. The Limestone Company's separate contention that there was no sufficient evidence to support a verdict against it is, we think, incorrect. That company pumped its oil through the line, inspected it, and repaired some small leaks before the commencement of this action, and large ones afterwards, and was paid for the oil after it arrived at the loading station in town. This evidence, in our judgment, was enough to go to the jury, entitling them to find the two companies jointly used and maintained the line. Under such finding the Limestone Company was equally liable. Colonial & U. S. Mortgage Co. v. Elsea et al. (1911) 85 Kan. 106, 116 P. 249.

6. Defendants' last contention is that the court erred in allowing the jury to assess exemplary damages when there was no evidence upon which they could be based. Plaintiff, in his brief, concedes this as error, but contends the error was harmless under section 3206, O. S. 1931, the "harmless error" statute. The court instructed the jury, whether correctly or not we have declined to decide, that it could award as actual damages the difference in the value of the land immediately before and after the laying of the line, and plaintiff testified this depreciation was $100, his witnesses more. We decided this question under an identical factual situation in Pine et al. v. Duncan (1937) 179 Okla. 336, 65 P. (2d) 492, and on the authority of that case, and those cited therein, hold this not reversible error.

Although the questions beyond those treated inhering in defendants' liability for use and occupation are not raised or briefed, we have examined the law applicable under the record, and are of the opinion plaintiff is entitled to recover. See section 10915, O. S. 1931; Earl v. Taylor (1912) 36 Okla. 179, 128 P. 269; Williamson v. Allen (1924) 105 Okla., 198, 232 P. 98; and Oakes v. Oakes, 16 Ill. 106.

The judgment of the trial court is affirmed.

BAYLESS, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur.