**EQUITY MUT. INS. CO. v. GENERAL CASUALTY CO. OF AMERICA et al.**

**No. 2739.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 20, 1943.

Rehearing Denied Feb. 12, 1944.

Vincent F. Hiebsch and Austin M. Cowan, both of Wichita, Kan. (Robert H. Nelson, of Wichita, Kan., on the brief), for appellant.

Glenn Porter, of Wichita, Kan. (Getto McDonald, Dwight S. Wallace, and William Tinker, all of Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge:

This is an appeal from a declaratory judgment of the United States District Court for the District of Kansas adjudging that the public liability insurance policy issued by the appellant company was in full force and effect on August 31, 1941, the date on which the insured was involved in an accident, and that the policy issued by the appellee company was void.

The La Brunerie Insurance Agency[1] of St. Joseph, Missouri, had handled the insurance business for the Motter family for years. J. B. Motter, Jr., requested La Brunerie to write a policy on the car which was involved in the accident, but this the agency could not do for the reason that it was not licensed to do business in Kansas, where young Motter was then living. La Brunerie called an agent in Kansas and asked him to write the policy in the appellant company. The policy was dated November 1, 1940, and was written for one year.

On August 19, 1941, the appellant company wrote La Brunerie as follows:

"This assured has sustained two serious accidents during the past sixty days and we desire to be relieved of liability under the above policies as quickly as possible.

---

[1] Herein called La Brunerie.

"Will you please pick up these policies and return for cancellation not later than September 1st?"

On August 27, 1941, without the knowledge or consent of Motter, La Brunerie obtained a new policy with the appellee company, marked appellant's policy cancelled on its agency books, and applied the unearned portion of the premium on the old policy as part payment of the premium on the new policy. The agency paid the amount of the premium on the new policy and debited Motter on its books for the amount of the premium, less the unearned premium on the old policy.

On August 31, 1941, Motter was involved in an automobile accident, upon which suit was subsequently instituted by the injured party. On the evening of August 31, 1941, Motter forwarded a letter to the appellant in which he notified it of the accident and referred to the policy issued by it. He also forwarded a carbon copy of this letter to La Brunerie. When the agency received the copy, it struck out the name of the appellant, wrote in the name of the appellee, and mailed the carbon copy to appellee. Motter first learned of the attempted cancellation of the old policy and substitution of the new on September 19, 1941, when he received the new policy through the mails, together with a request that he execute a "lost policy receipt" for the old policy, and return it to La Brunerie.

After an investigation, both companies denied liability. Appellee tendered a return of premium, which was not accepted, and refused to defend the suit. Appellant undertook a defense of the suit under reservation of right as to liability. Both policies contain the usual clause permitting cancellation by the company upon five days' notice in writing to the insured. It is conceded that appellant gave Motter no written notice of intention to cancel, as provided for in the policy. There, therefore, can be no cancellation of appellant's policy unless the relationship of La Brunerie to Motter was such as would permit it to cancel the policy, waive the provision for five days' notice, and switch the insurance about from company to company, without notice to him.

█ It must be conceded that La Brunerie represented Motter in the procurement of the policy in the appellant company. Considerable space is devoted by the parties to the question whether La Brunerie was a broker or an insurance agent. In our view, this is immaterial. Generally speaking, a broker is one engaged in writing insurance. He is not attached to any particular company. He secures the business and then places it where he can. Whether La Brunerie wrote this policy as agent or as a broker, he was the agent of Motter, and the rights and liabilities flowing therefrom are determined by the principles of agency.

Appellant rests its case upon the proposition that La Brunerie was the general agent for Motter, charged with the responsibility of keeping his property insured, and clothed with full authority to cancel appellant's policy and substitute that of appellee in its place.

█ In our opinion, it is not necessary to the decision of the case to determine whether an agent who has authority to keep property insured may accept or waive notice of cancellation or transfer insurance from one company to another prior to the expiration of a policy, because the record fails to establish such an agency.

Motter testified as follows: "I am acquainted with and had business dealings with the firm of Ferd La-Brunerie & Son Insurance Agency of St. Joseph, Missouri. This firm wrote the insurance for the family on their cars and house. When I bought the insurance on my present car I called Walker La Brunerie, told him I was buying a car and to cover it with the regular insurance I had always carried. I did not designate any particular company nor did I have any preference for any company. Walker was competent enough that he would give me a good company. There never was a thought in my mind about the company it was placed with."

La Brunerie testified that:

"I have handled business for the Motter family for about 14 years and my father handled it before that. I have had an account on J. B. Motter's automobile ever since he had one, about five or six years.

*     *     *     *     *

"A. We renewed the policies as they came up.

"Q. With reference to your dealings with him, was his request for insurance for any specific company or coverage or how was that handled? A. Well, he wanted—he told me the coverage when we first started writing his insurance. His father had told us what to cover it with

and we continued to cover it that way up to date.

"Q. Was there any designation at any time for any specific company? A. We change the companies quite often. I will explain it so that you will get it.

"We would change the companies in the office and we just changed over to the company we had at that time."

■ That is all the testimony to establish a general agency of such a nature as would enable La Brunerie to take over the insurance of Motter's property, change it about as it saw fit, and accept or waive notice of cancellation without consulting the insured. It is doubtful if one automobile owner out of ten designates or knows the company in which his insurance is written. It is also well known that when a policy once is written, the agent makes a note thereof and makes out and mails a new policy to the insured before its expiration date. This is done as a matter of keeping and promoting business, and the insured is under no obligation to accept such a policy. The most that can be said from the evidence is that when La Brunerie received a request for an insurance policy, he wrote it and issued renewal policies, sometimes in different companies, as the old policies expired. Any good insurance agency will do the same thing.

■ Appellant's policy remained in force unless Motter ratified the attempted cancellation and accepted the substituted policy in the appellee company when he was informed of it. It appears to us that his conduct was inconsistent with acquiescence in the cancellation of the original policy. Had he acquiesced, he would no doubt have returned the policy or signed the lost policy receipt and returned it to La Brunerie, as he was requested to do in the letter of September 19. But instead, he refused to sign and return the lost policy receipt. True, after he had received appellee's policy and when it offered to return the premium and demanded a surrender of the policy, he refused to accept the return premium and surrender the policy. His whole conduct indicates an attitude of letting matters stand as they were until his rights were determined.

■ Until Motter had ratified the unauthorized transaction resulting in the issuance of the policy by the appellee, it had a right to withdraw. Restatement of

Law, Agency, Vol. 1, § 88, states the rule as follows: "To constitute ratification, the affirmance of the transaction must be before the third person has manifested his withdrawal from it, either to the purported principal or to the agent and before the offer or agreement has otherwise terminated or been discharged."

The reasons for the rule are stated in the comment to the section, as follows: "Until affirmance, the relationship of the third person to the purported principal is similar to that of an offeror to an offeree. Before such time, therefore, the third person is free to withdraw, either because he discovers that the principal has not authorized the transaction or for any other reason. This is so although the agent has not represented that he is authorized, and although the other party has contracted with the agent that he will not withdraw."

See, also, Marqusee v. Hartford Fire Ins. Co., 2 Cir., 198 F. 475, 42 L.R.A.,N.S., 1025; Masonic Temple v. Ebert, 199 S.C. 5, 18 S.E.2d 584; 2 C.J.S., Agency, § 64, subd. d(2); 2 Am.Jur., Agency, § 213.

■ It seems to us that the letter of November 17 by appellee, in which it tendered a return of premium, evidenced an intention to withdraw, and that Motter could not thereafter ratify the unauthorized act of the agency in writing the policy. The policy of the appellee therefore never became effective.

Affirmed.

MURRAH, Circuit Judge (dissenting).

For many years preceding the event which precipitated this lawsuit, the La-Brunerie Agency had written all of the insurance for the Motter family, including the insured herein. When the insured purchased a new automobile in the State of Kansas, he merely called the LaBrunerie Agency at St. Joseph, Missouri, giving it the necessary data, with instructions to write a casualty insurance policy in accordance with the understanding which had existed between the Agency and the Motter family for about 14 years. Motter was interested only in coverage for his automobile, and the type and kind of coverage which he wanted was already well known to the Agency. LaBrunerie, an insurance agent in Missouri, was not authorized to write and deliver the policy in the State of Kansas, consequently he secured the policy from a Kansas agent, paid the premium, and charged Motter

therefor on his books. When, on August 19, 1941, the insurer (Equity Mutual Insurance Company, appellant here), notified the LaBrunerie Agency of its intention to cancel the policy as of September 1, 1941, instructing the Agency to pick up the policy not later than that date, it became incumbent upon the Agency to secure other insurance if it was to keep Motter covered in accordance with its "past business practice". Accordingly, the Agency procured the issuance of another policy in the General Casualty Company (appellee), for which it was a policy writing agent in the State of Missouri, but not in Kansas. Consequently, the application for the policy was submitted to the general agency in St. Louis, Missouri, which issued the policy and caused it to be countersigned by a policy writing agent in Kansas. The policy was dated August 28, 1941, effective August 27, 1941, and the premium thereon was paid by crediting the insured with the unearned premium on the first policy, and charging his account for the balance. By this transaction, LaBrunerie canceled the first policy and substituted the other.

The trial court concluded that the LaBrunerie Agency "did, pursuant to past business practice, assume to see that the said Motter was covered by liability insurance." In my judgment, this factual conclusion is amply supported by the facts of record, and as recited by the majority.

Where an insurance agent is merely employed to write or procure certain insurance, his authority for the insured is exhausted when he has done so, and he has no authority to consent to its cancellation, to waive the five-day rule, or to accept a substitute policy. Merchants' Ins. Co. v. Shults, 8 Kan.App. 798, 57 P. 306; Grace v. American Cent. Ins. Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932; Couch on Insurance, Vol. 2, p. 1342, Sec. 474. But where such agent is authorized by the insured not only to procure insurance, but also to keep the property covered, he has implied authority to do whatever is reasonably necessary to accomplish that object, and he may waive the five-day clause, cancel or accept cancellation of the existing policy, and substitute other like insurance, all without notice or consent of the insured. Rose Inn Corp. v. National Union Fire Ins. Co., 258 N.Y. 51, 179 N.E. 256, 83 A.L.R. 293; Pelaggi & Co. v. Orient Ins. Co., 102 Vt. 384, 148 A. 869, 873; Kerr v. Milwaukee Mechanics' Ins.

Co., 8 Cir., 117 F. 442, 447; Federal Ins. Co. v. Sydeman, 82 N.H. 482, 136 A. 136; Orkin v. Standard Fire Ins. Co., 99 N.J.L. 114, 122 A. 823; Insurance Co. of North America v. Burton, 147 Okl. 112, 294 P. 796. See also Annotation 83 A.L.R. 298, sub. IV; Couch on Insurance, Vol. 2, Sec. 474, p. 1447. The majority hold merely that the facts do not bring this case within the rule, which would authorize the LaBrunerie Agency to cancel the policy in the Equity Mutual Insurance Company (appellant), without the knowledge or consent of the insured.

It seems to me that in these circumstances, the LaBrunerie Agency had implied authority to take the necessary steps to keep Motter covered by insurance. When the Equity Mutual served notice of its intention to cancel the subsisting policy, it became necessary for the LaBrunerie Agency to procure other insurance if it was to keep Motter covered in accordance with its "past business practice." Thus, when LaBrunerie procured the second policy, and canceled the first policy, it acted not only within the scope of its authority, but faithful to its assumed responsibilities. The decision here does not turn on the narrow question whether LaBrunerie was empowered to accept notice of cancellation for and on behalf of Motter. The cancellation was effected not by the acceptance of notice, but by the affirmative act of cancellation, followed by the substitution of another like policy. Cf. Rose Inn Corp. v. National Union Fire Ins. Co., supra.

It is argued that the last policy was void or voidable from its inception because of a false answer to a question which was material to the risk. In answer to a direct question in the policy, it was stated that no insurer had canceled any authmobile insurance issued to the insured during the past year. The question and answer was material to the risk involved, and was false as the LaBrunerie Agency well knew. Although LaBrunerie was the agent of Motter for the purpose of procuring other insurance, it was also a policy writing agent of the insurer, and in these circumstances, knowledge of the agent was the knowledge of the company he represented. Continental Ins. Co. v. Pierce, 39 Kan. 396, 18 P. 291, 7 Am.St. Rep. 557; Standard Life & Accident Ins. Co. v. Davis, 59 Kan. 521, 53 P. 856; Colonial & U. S. Mortgage Co. v. Elsea, 85 Kan. 106, 116 P. 249, Ann.Cas.1912C, 1145.

Cf. Wilson v. German-American Ins. Co., 90 Kan. 355, 133 P. 715; Rosedale Securities Co. v. Home Ins. Co., 120 Kan. 415, 243 P. 1023; Riddle v. Rankin, 146 Kan. 316, 69 P.2d 722; Reser v. Southern Kansas Mutual Insurance Co., 150 Kan. 58, 91 P.2d 25. The policy of the General Casualty Company was not void or voidable, but was valid and subsisting from the date of its issuance.

I would reverse the lower court in accordance with these views.