[No. 30589. Department One. August 17, 1948.]

REED LOGGING COMPANY, INC., *Appellant*, v. LOUIS MARENAKOS *et al., Respondents.*[1]

*Clarence J. Coleman, Thomas G. McCrea,* and *Erle W. Horswill,* for appellant.

*Shorett, Taylor & Revelle,* for respondents.

[1]Reported in 196 P. (2d) 737.

HILL, J.—The Reed Logging Company, Inc., a corporation, appellant here, had only two stockholders, Oliver S. Reed and Paul C. Bryan. It had carried on logging operations in sections 6 and 8, township 21 north, range 8 east, W. M., from 1938 to 1940. To get its logs out, it had acquired rights of way and had constructed a logging truck road from the public highway at Kangley to the north line of section 6 aforesaid, a distance of 3.2 miles, for which rights of way it paid either nothing at all or nominal yearly rentals.

This logging road extends across section 6, progressing in a tortuous but generally southerly direction through the westerly part of the section until it reaches the east-west center line of the section, and then it runs in an equally tortuous but generally easterly direction. At the point where it crosses the north-south center line of the section, the road is north of the east-west center line. While the road thereafter turns south and proceeds southerly through the SE¼ of section 6, the termini of that portion of the road around which this controversy centers are the point where it enters section 6 on the north line thereof and the point where it crosses the east-west center line of that section in passing from the NE¼ to the SE¼. The length of that section of the road is some 8,400.68 feet, and its cost of construction was approximately twenty-three thousand dollars. (The Reed Logging Company's title to the SE¼ and to the S½ of the SW¼ of section 6 was lost by tax foreclosure in 1942.)

For a proper understanding of this case, it must be remembered that the logging company also had timber in section 8 of township 21 north, range 8 east, W. M. For logging, the best access to the NW¼, and the only feasible access to the SW¼, of section 8 was through section 7, which is, of course, immediately south of section 6 and west of section 8. However, the logging company was unable to get a right of way through section 7 and was compelled to extend its road from the SE¼ of section 6 into and through the southwest corner of section 5 (which is immediately east of section 6 and north of section 8), entering the NW¼

of section 8 from the north. The road was then extended south through the NW¼ of section 8 as far as the terrain permitted.

The logging company, having completed logging section 6 and having removed all the timber from the NW¼ of section 8 which was accessible from the road which it had constructed, ceased its operations in 1940 and thereafter assigned all of its interest in the SW¼ of section 8 to Paul C. Bryan, who in turn sold the timber in that quarter section to Louis Marenakos in August of 1942.

As noted above, the only feasible route for the removal of this timber was through section 7. Marenakos was able to purchase the timber on section 7 from the Weyerhaeuser Timber Company in August, 1943. Even before the negotiations for the purchase were completed, at the suggestion of Weyerhaeuser officials he commenced to reopen the road originally constructed by the Reed Logging Company, spending some four thousand dollars for that purpose. He then constructed an extension of the road, going southerly through the S½ of section 6 (for the most part through the area to which the Reed Logging Company had lost title by the tax foreclosure aforesaid), and southeasterly through section 7, and ultimately into the SW¼ of section 8.

Marenakos' logging operations in section 7 extended through 1943, 1944, 1945, and 1946, and during that period he cut timber totaling 19,547,570 board feet and moved the logs out over the road which the Reed Logging Company had constructed and the extension of the road which he had built. (It should perhaps be said, lest those reading these opinions in time to come arrive at erroneous conclusions regarding the productivity of our foothill timberlands, that this timber was all from the E½ of section 7; however, that fact is not material to the issues here involved and, since the witnesses have consistently referred to section 7 without designating any particular portion thereof, we have, for purposes of brevity, done the same.)

The Reed Logging Company concedes that it had transferred to Marenakos all easements for the logging truck road north of section 6 to the public highway, and it claims

no right to compensation for any use made of the road it had constructed where the road traverses land to which the company had lost title by the tax foreclosure. But, between the termini above referred to, the logging truck road traverses the N½ and the N½ of the SW¼ of section 6, to all of which the logging company did have title; and, for the use of that portion of the road, the company commenced this action against Louis Marenakos and his wife and their marital community, asking one dollar per thousand board feet for all logs from section 7 hauled over that portion of the road, or $19,547.

The trial court found that Marenakos had moved the logs over appellant's road under an oral license, and dismissed the action. The Reed Logging Company appealed. Louis Marenakos will hereafter be referred to as though he were the sole respondent.

The real crux of this controversy lies in determining what agreement there was, if any, relative to the use of that portion of the logging road which traverses the land owned by the appellant.

Reed and Bryan were, as heretofore indicated, the only officers and stockholders of the appellant. When Bryan sold the timber in the SW¼ of section 8 to Marenakos in 1942, all three of them knew that the only feasible way to get it out was through section 7, and Bryan at that time said to Marenakos, "You got the roads there, if you can get it," meaning thereby the timber on section 7. In June of 1944, Marenakos advised Bryan that he was then logging section 7.

Reed admits that he knew in August, 1943, that Marenakos was logging on section 7, but he says he thought Marenakos was just clearing a right of way to get to the timber in the SW¼ of section 8. However, there is testimony that the logging operation which he saw Marenakos conducting on section 7 at that time was not limited to a right of way but involved a swath one thousand feet in width.

We, therefore, proceed on the justifiable assumption that Reed and Bryan had actual knowledge, the former from August, 1943, and the latter from June of 1944, that Mare-

nakos was logging section 7 and was using the appellant's road for the purpose of transporting the logs.

As we read the testimony on behalf of the appellant and study its brief, we find no contention that either Bryan or Reed had ever intimated, prior to the commencement of this action in October, 1946, that a charge would be made for taking the logs from section 7 over the appellant's logging truck road, although Bryan did say, in September, 1946, after the logging on that section had been completed and Marenakos had asked for an extension of time to remove the timber from the SW¼ of section 8, that if he, Bryan, had been smart, he would have collected rent for the use of the road for taking out the logs from section 7. Somewhat baldly stated, the position of Bryan and Reed is that they had agreed that the logs from the SW¼ of section 8 could be transported over that road but that they had said nothing about logs from section 7, and that, if Marenakos assumed, as he obviously did, that they would make no charge for the use of the road in transporting logs from areas other than the SW¼ of section 8, that was his misfortune. They seek to ameliorate their position by contending that their silence about logs from section 7 was due to the fact that they did not know, until September of 1946, that Marenakos was logging that section. However, on that point the evidence clearly preponderates against them and the trial court obviously did not believe them.

■ It may be that Bryan's statement that "You got the roads there, if you can get it," regarding the timber on section 7, provides sufficient basis for the trial court's finding of an "oral license granted by the plaintiff [appellant] to use said road without limitations"; but we are of the opinion that, in any event, there was an implied license to use the road without charge. It has been said that when an owner of land, with full knowledge of the facts, tacitly permits another repeatedly to do acts upon the land, *license may be implied* from his acquiescence or failure to object. 53 C.J.S. 809, Licenses, § 81.

■ We will concede, as appellant strenuously insists, that the owner's consent to the free use of his property is

not *necessarily* to be inferred from his silence or failure to object when he sees it being used by another. It seems to us that in such a case, where no equitable estoppel is involved, there may often be a very close question whether there is a tenancy by sufferance and hence an obligation to pay for the use of the property, or a license to use the property without charge. The determination of that question must in many cases depend upon whether or not the person owning the property had a reasonable expectation of compensation for that use. When the owner shows the use of his property by another, the burden of establishing the facts from which the conclusion could be drawn that the owner had no reasonable expectation of compensation for that use, is upon the person using the property. *Tulsa Petroleum Corp. v. Westmoreland,* 180 Okla. 459, 70 P. (2d) 110.

We are satisfied that there was sufficient testimony to justify the trier of the facts in concluding that the appellant had consented to the use of its logging truck road by the respondent for transporting logs from section 7, and that it did not expect compensation therefor. Bryan had told the respondent that he had a road and that he only had to pay the Pacific Coast Company ten dollars for the easement. If there was any other charge for the use of the road, mention should have been made of it at that time. Reed's statements to Bill Marenakos in August, 1943, at the very beginning of the operations, were certainly not the statements of a corporate officer whose company was expecting to be compensated for the use of its theretofore abandoned logging road. More weight will be attached to silence regarding any compensation as evidencing an intention to grant a license where owners stand by and permit the continued use of their property when the use is such that there are no generally recognized criteria for determining the compensation therefor, except the old pistol-at-head formula of "Your money or your life."

Such an implied, if not express, license as we find to have been granted by the appellant to the respondent, is ordinarily revocable at will. *Hathaway v. Yakima Water, Light & Power Co.,* 14 Wash. 469, 44 Pac. 896, 53 Am. St. 874.

A sharp division of authority on the question of when such a license may be revoked is indicated by that opinion. No question of revocation is presented here, as the entire 19,547,570 board feet from section 7 had been moved out over the road in question before the respondent received any notification that he was expected to pay for the use of the road.

Appellant's contentions that Bryan's promises or statements could not bind it, merit scant consideration, since, if he had authority to grant the use of the logging truck road for the logs to be taken from section 8, which is conceded, he had apparent authority to grant such use for the logs to be taken from section 7. However, the implication of a license to use the logging truck road free of charge arises not alone from the statements of Bryan but from the statements and conduct of both Bryan and Reed, the sole stockholders and only officers of the appellant.

■ The foregoing, while not discussing them *seriatim,* disposes of all the appellant's assignments of error except its contention that defendant's exhibits Nos. 26, 27, and 28, should not have been admitted in evidence. These exhibits were documents executed in September, 1946, after completion of the logging in section 7, and by them Marenakos secured title to the SW¼ of section 8 (whereas previously he had had only the right to remove the timber therefrom), and a right of way from the Reed Logging Company across section 6 "for the purpose of removal of timber from Section 8, and no other section." When these documents were offered, appellant's counsel stated:

"I have an objection, if by the admission of these documents there is an attempt to raise any new defense on the basis of settlement."

It is clear that the trial court never considered any defense of settlement, and we certainly have not. This assignment of error is without merit.

The judgment is affirmed.

MALLERY, C. J., MILLARD, SIMPSON, and SCHWELLENBACH, JJ., concur.