HAMCO OIL AND DRILLING COMPANY, a corporation, Plaintiff in Error,

v.

J. A. ERVIN, Defendant in Error.

No. 38611.

Supreme Court of Oklahoma.

April 5, 1960.

Rehearing Denied Aug. 9, 1960.

Daniel Bassett, Bartlesville, Arthur Meyer, Nowata, for plaintiff in error.

J. R. Hall, Jr., Miami, John L. Ward, Jr., Lloyd G. Larkin, Tulsa, for defendant in error.

BERRY, Justice.

The parties will be referred to herein as they appeared in the trial court which is in reverse order to their appearance here.

In this action plaintiff seeks to recover damages from defendant for the alleged conversion of pipe, four small drilling rigs and machinery, tools and supplies customarily used in operating and maintaining such rigs.

The case was tried to the court. At the conclusion of the trial, judgment was rendered in plaintiff's favor for $19,295.33, together with interest at the rate of 6% from November 6, 1956, which was the date of the alleged conversion. From order denying defendant's motion for new trial defendant perfected this appeal.

In so far as material to this appeal, plaintiff alleged in her petition that M. W. Hamilton, hereafter referred to as "Hamilton", was "during all the times herein mentioned, the duly authorized agent for the defendant Hamco Oil and Drilling Company, and was at all times acting within the scope of his employment as the agent for said defendant"; that on November 6, 1956, plaintiff was the owner of certain oil-field property which was described in an inventory attached to the petition as "Exhibit A"; that on said November 6, 1956, defendant, acting through its agent, Hamilton, sold and converted the property described in Exhibit A; that as a result of the conversion plaintiff was damaged in the amount of $22,295.33. Plaintiff prayed for damages in the amount last mentioned.

Defendant filed an answer wherein it admitted the allegations of plaintiff's petition as to its corporate existence but denied all other allegations of the petition.

The defendant contends that the evidence fails to show either of the following things: (1) that Hamilton was acting as

defendant's agent in selling plaintiff's property; (2) that plaintiff's property was in fact converted; (3) the value of the property allegedly converted as of the date of the conversion.

■ Defendant's contention first above mentioned is not well taken. Defendant did not verify its answer and therefore admitted the allegations of plaintiff's petition to the effect that Hamilton acted as defendant's agent in selling plaintiff's property. See 12 O.S.1951 § 286.

■ There is a conflict in the evidence as to whether plaintiff consented to or acquiesced in Hamilton's selling her property to a third person. Plaintiff testified that she did not authorize the sale, at no time acquiesced in the sale and, in fact, knew nothing about the sale until several months after it was made. Hamilton testified that plaintiff authorized the sale from which $1,650 was realized and acquiesced therein by knowingly permitting the seller to remove from the lease the bulk of the property sold; that plaintiff agreed that he should retain proceeds of the sale to defray expense of plugging wells that plaintiff had drilled in order to carry out repressuring operations on certain oil and gas leases in which plaintiff and defendant were interested. The trial court chose to believe plaintiff and not Hamilton. In view of the fact that there is competent evidence sustaining plaintiff's contention that her property was converted, defendant's second contention is not well taken.

We are, however, of the opinion that defendant's third and remaining contention to the effect that the evidence fails to establish the value of the property converted as of the date of the conversion is well taken. The evidence bearing upon said contention is in substance this:

From 1950 to 1954 plaintiff engaged in prospecting for oil and gas on contiguous leases covering land in Oklahoma and Kansas. She drilled five or more test wells for oil or gas on the leases. In her drilling operations she, in 1950 and 1951, purchased four small standard drilling rigs (commonly referred to as "spudders") at an aggregate cost of $15,750. From 1950 to 1956 plaintiff also purchased in connection with her drilling operations oil-field pipe, water line, oil-field machinery, equipment, tools and supplies. Plaintiff prepared inventories of oil-field property on her leases as of May, 1954 and May, 1956, and testified as to the cost of each article listed in the inventories. The inventories were introduced in evidence. Plaintiff did not testify as to the value of any of her oil-field property as of date of the alleged conversion.

Two witnesses testified relative to the value of the property allegedly converted. One of the witnesses testified that he was, and for some thirty years had been, engaged in selling certain types of oil-field equipment. He testified that he could, and in fact did give a value of oil-field property on plaintiff's lease as of November 6, 1956, which was of the type that he sold, which value was placed at approximately the inventoried cost of same. He listed a great many items appearing in the May, 1956, inventory as items that he did not sell and for said reason had no opinion as to the value of same as of any date. A few of the many items that he failed to value were drilling rigs, pipe, control head, dog houses, derrick house, light poles, vacuum tester, welding outfits, supplies, etc. It is, in fact, impossible to separate with any degree of certainty the items that this witness placed a value upon and those upon which he didn't place a value.

The other witness (a Mr. Long), on value testified in substance that he assisted in making the inventories heretofore referred to, including an inventory made in May, 1958, covering the property which was not removed from the lease by the person purchasing from Hamilton. He testified that the value of the property left on the lease as of November 6, 1956, was $3,000. He testified further that the value of all of the property on the lease as of May 22, 1954 was $30,000. Plaintiff testified that between May 22, 1954 and November 6, 1956, she had sold some of the property.

The property sold was not identified. The witness did not give an opinion relative to the aggregate value of the property on the lease as of November 6, 1956, nor did he give an opinion as to the value of particular items of property listed in the May, 1956, inventory. The witness testified that he could not give an opinion as to the value of the four drilling rigs; that he did not know the condition of same and that the value of the rigs would depend on the physical condition of the rigs—whether the timbers thereof were rotten, etc. The person who purchased the rigs from Hamilton testified that the rigs were old and obsolete; that it was not thought advisable to attempt to repair three of the rigs which were burned on the lease in order to salvage the metal portions of same; that the other rig was repaired but that he was of the opinion that he lost money in repairing it and that it too should have been salvaged. It appears that some of the pipe, tubing and rods listed in the inventories had been cemented in one or more of the wells that plaintiff drilled. There is no evidence relative to the salvage value of this property.

During the trial, plaintiff's attorney dictated to the court reporter a statement to the effect that "It's agreed and stipulated by and between parties that had Mr. B. E. Long been called to testify he would have testified that he is an employee of the Acme Foundry and Equipment Company, and has had many years experience in buying and selling of oil field equipment and supplies, and that from his knowledge the value of the equipment listed in plaintiff's Exhibit A would have been worth $22,295.00 as of November 6, 1956, even when the property listed in Plaintiff's Exhibit 22 is deducted therefrom." The record does not show that defendant's attorney expressly agreed to the stipulation. Plaintiff contends that the record shows that the trial court considered that the stipulation was binding upon the parties which plaintiff asserts is reflected by the fact that the court entered judgment in an amount which was $3,000 (the value of the property left on the lease) less than the value stated in the stipulation. In view of the fact that the judgment is for $19,295.33, the court apparently did not rely wholly upon the stipulation. In any event, after the stipulation or offer to stipulate was dictated into the record, Mr. Long was placed on the witness stand by plaintiff and he testified in detail. His testimony, as we have pointed out, clearly shows that he had no opinion as to the value of the rigs and only placed a value on a portion of the other property that is in controversy.

■ If we assume that the parties agreed to stipulate as suggested by plaintiff, or that defendant by silence agreed to the stipulation, we are nevertheless of the opinion that the stipulation under the facts is without probative effect. As pointed out, following the stipulation or offer to stipulate, plaintiff placed Mr. Long on the witness stand and from him elicited testimony that bore directly on the question of the value of the property alleged to have been converted, which testimony contradicted the conclusion as to value that was stated in the stipulation. By doing so we are of the opinion that plaintiff waived and abandoned the stipulation and for said reason cannot now rely upon same. Gorman v. Wilson, 186 Okl. 435, 98 P.2d 600, and 83 C.J.S. Stipulations § 30, p. 84.

■ It is well settled law in this jurisdiction that in an action for the conversion of property, the plaintiff's measure of damages is the fair market value of the property converted at the time and place of conversion, together with interest, except where the plaintiff has presented his suit with diligence he may elect to take as damages the highest fair market value of the property at any time between the conversion thereof and the verdict, with interest. See 23 O.S.1951 § 64; First Nat. Bank of Lawton v. Thompson, 41 Okl. 88, 137 P. 668, and First Nat. Bank of Tipton v. Carroll, 103 Okl. 5, 229 P. 165.

■■ It is also settled law in this jurisdiction that in an action for conversion, the evidence must show the value of the prop-

erty converted as of date of conversion or at a subsequent date if the action is prosecuted with reasonable diligence. See case last above cited and Anthony v. Sapulpa Motor Co., 162 Okl. 263, 20 P.2d 172.

In the instant case plaintiff seeks to recover as damages the fair market value of the property converted as of the date same was converted. The evidence wholly fails to show the market value of the drilling rigs as of date of conversion or the fair market value of a great many of the other items that plaintiff asserts were converted. Moreover, and as pointed out, it is impossible with any degree of certainty to determine the items upon which a value was fixed as of date of conversion. The trial court therefore erred in rendering judgment for plaintiff.

Reversed and remanded for new trial.

WILLIAMS, V. C. J., and WELCH, HALLEY, BLACKBIRD, JACKSON and IRWIN, JJ., concur.